[Crim. No. 8744.   Second Dist., Div. Four.   Feb. 27, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIE ROBBINS, Defendant and Appellant.

Frank Duncan for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Charles W. Rumph, Deputy Attorneys General, for Plaintiff and Respondent.

JEFFERSON, J.—A jury found defendant guilty of possession of heroin for sale, in violation of section 11500.5 of the Health and Safety Code. Defendant admitted a prior narcotic law conviction for violation of section 11500 of the

Health and Safety Code. Defendant's motions for a new trial, to reduce the offense to a violation of section 11500 of Health and Safety Code (possession of narcotics) and for probation, were denied and defendant was sentenced to state prison for the term prescribed by law. Defendant appeals from the judgment of conviction.

John C. Hanks of the narcotics division of the Los Angeles Police Department testified that, on May 22, 1962, at approximately 3 p.m., he was staked out near the residence of defendant. While looking through binoculars, he observed defendant and Vernia Roland drive up to defendant's residence and go into the house. Approximately 10 minutes later defendant came out of the front door and down a flight of stairs at the bottom of which he stooped down out of the officer's vision; defendant reappeared in approximately one minute, and entered a small attached room where he remained for a minute or two; defendant then came back into the officer's view and reentered the house.

On May 29, 1962, at approximately 2:30 p.m., Officer Hanks again had defendant's house under surveillance. On this occasion he observed defendant walk down the front stairs of the residence and into the front yard. There, he was seen to bend down out of sight, then straighten up and go to another location, where he repeated the same movements. Defendant then started up the stairs, but before reaching the front door, he stopped, descended the stairway again and walked into the small room on the ground level. In a short time he reappeared, and again walked over to the bottom of the stairs, where he again stooped down out of the officer's range of vision. When he again reappeared and walked up the stairs to the house, he was carrying what the officer described as a small white object. Approximately 10 minutes after defendant entered his house with the white object, a man entered defendant's home, remained a few moments, and then left.

On June 4, 1962, Officer Hanks and three other officers served defendant with a search warrant and entered his residence. They searched defendant's person and the house but did not discover any narcotics. Officer Hanks made a search of defendant's yard, and, in particular, the area where he had previously observed defendant stooping and moving around. Underneath a geranium bush in the yard of a neighbor, he found a brown cloth satchel containing 11 rubber condoms, each of which contained a white powdery substance (6¼ ozs. in weight), which, according to later chemical

analysis, was heroin. The satchel was located approximately 6 inches from a picket fence which separated defendant's yard from that of the neighbor and in the same general area where Officer Hanks had observed defendant bending over. The officer reached through the picket fence from defendant's yard and recovered the satchel and its contents.

Officer Hanks showed his find to defendant, stating "Everything is real rosy when you're out there peddling this stuff and making money, but one day the heat drops down on you and everything isn't so rosy." Defendant replied, "Well, man, if you're going to play, you've got to pay." The officer then asked defendant, "How much stuff is in that bag?" Defendant replied, "Look, you're a man and I'm a man—I'm not going to say anything—you understand what I'm talking about."

Mrs. Thomas, defendant's neighbor in whose yard the narcotics were found, testified that on June 4, 1962, she observed defendant "patting" at the foot of the steps near the geranium bushes.

Defendant did not testify in his own behalf, but called as a witness Vernia Roland, who testified that she owned the house in which defendant was arrested; that defendant resided at that address; she kept a little throw rug on the front step of the house which often became "mussed up" when people walked up and down the stairs; she and defendant were constantly stooping down at the foot of the stairs to rearrange the rug; she had a little Chihuahua puppy; both she and defendant oftentimes played with the puppy and threw it a white toy bone. It was stipulated that the witness, Vernia Roland, had suffered a prior felony conviction.

Defendant contends that the trial court committed prejudicial error when it admitted into evidence a posed photograph (Exhibit 9), taken at the location where the narcotics were found. Defendant asserts that the photograph portrays Officer Hanks standing on the stairway of defendant's dwelling holding one of the condoms filled with heroin which the officer had found. Defendant argues that, since Officer Hanks testified he could not identify the small white object he saw in defendant's hand, a posed photograph depicting the officer, standing in the location where he saw defendant, holding part of the seized narcotics, was not an accurate representation of what the officer testified he saw, and further, was highly prejudicial to defendant's case. In addition it is argued that the photograph was not taken at

the same time of day nor from the same distance, location or angle.

We do not agree with defendant's assertion that the photograph (Exhibit 9) depicts Officer Hanks holding one of the condoms. From the photograph we can determine nothing more than that the officer is holding a small white object. Further, Officer Hanks testified, with respect to the photograph, that it was a fair and accurate representation of the conditions existing as observed by him on May 29, 1962. ▮ As stated in *People* v. *Sambrano,* 33 Cal.App.2d 200, at p. 213 [91 P.2d 221]: "Courts are authorized to receive in evidence photographs in the same class as diagrams, when they accurately depict the locality of the crime, together with weapons, objects and physical conditions which are unchanged in status or in relation to the surrounding conditions as shown at the trial by accompanying testimony. [Citations.]" See also *People* v. *Jackson,* 74 Cal.App.2d 22, 25 [167 P.2d 776]. ▮ And, "'It is for the trial court to determine, from the evidence before it, whether a photograph offered is a correct representation of the object or scene in question, and the ruling will be sustained on appeal unless it is apparent that there has been an abuse of discretion.' [Citation.]" (*People* v. *Crooms,* 66 Cal.App.2d 491, 496 [152 P.2d 533].) ▮ No abuse of discretion is apparent in the instant case.

▮ Defendant contends the deputy district attorney committed prejudicial misconduct in asking defense counsel on three occasions, in effect, whether he was waiving objection to the prosecution's inquiry into the character of defendant as a narcotics peddler or user. The following background facts are pertinent: The deputy district attorney, in developing the case of the People, had asked its witness, Officer Hanks, whether, as a narcotics expert, he knew about any general habit among narcotics peddlers in carrying large quantities of narcotics. Defense counsel objected to this question, stating that there was no evidence to suggest that defendant was a narcotics peddler. The deputy district attorney responded with his remarks regarding the waiving of objections to inquiry into the subject of defendant's character as a narcotics peddler. The court overruled the objection of defense counsel and admonished the jury to "disregard the colloquy between counsel." The jury was further admonished that "no implications are to be drawn from the asking of the question other than its being received and limited for the sole purpose of ascertaining whether there is

any method of reference to the holding or handling of narcotics and this does not directly relate to or involve this defendant.'' Despite this instruction and admonition, defense counsel again objected to a further question posed to the same witness, which was similar to the first question asked, and the deputy district attorney, in response, again asked whether the defense was waiving its objection to an inquiry into defendant's character. The court overruled the objection of defense counsel but gave no further admonition to the jury. However, none was requested. We view the exchange between counsel to be the result of a heated trial. Though the remarks of the deputy district attorney were improper, any prejudicial effect was cured by the court's instruction and admonition.

Defendant further contends that the deputy district attorney was guilty of misconduct, when, on three occasions in his closing argument to the jury, he allegedly referred to facts not in evidence. ■ The rule, however, is firmly established '' ... that unless the harmful results of misconduct of the district attorney cannot be obviated by appropriate instructions of the trial court, error cannot be predicated in this court on such alleged misconduct in the absence of (a) assignment of such misconduct as error; and (b) a request to the trial court to instruct the jury to disregard it. [Citations.]'' (*People* v. *Hampton*, 47 Cal.2d 239, 240-241 [302 P.2d 300].) In the instant case, there was neither assignment of misconduct nor request for instruction. This is not the type of case where, as in *People* v. *Evans*, 39 Cal.2d 242 [246 P.2d 636], an admonition by the court could not have obviated the harmful effects of the comments.

Defendant contends that the corpus delicti of the crime of possession of a narcotic for sale was not established by evidence independent of defendant's alleged admission. ■ The rule is clear that the corpus delicti must be established by evidence independent of the extrajudicial declarations of the defendant. (*People* v. *Cullen*, 37 Cal.2d 614, 624 [234 P.2d 1]; *People* v. *Amaya*, 40 Cal.2d 70, 75-76 [251 P.2d 324].) ■ However, as a prerequisite to the reception of such declaration, the corpus delicti need not be established by proof sufficient to establish the fact of guilt; rather it is sufficient that only a prima facie showing be made. (*People* v. *Amaya, supra*, 40 Cal.2d 70, 76.) ■ Such a showing was made in the case at bench. ■ The corpus delicti of possessing a narcotic for sale is (1) possession of the nar-

cotic by someone, and (2) possessing it for purposes of sale. (*People* v. *Chavez*, 208 Cal.App.2d 248 [24 Cal.Rptr. 895].)

The record in the instant case reveals that defendant was observed to have repeatedly bent over in the immediate vicinity where a satchel containing narcotics was found secreted, thus supporting the inference of his possession of the narcotics. The great amount of heroin found, plus the fact that it was packaged in 11 separate containers, support the inference that it was possessed for sale rather than for personal use.

Defendant contends the trial court committed reversible error in failing on its own motion to instruct the jury that the corpus delicti must be independently established. The trial court's failure to give this instruction was indeed error. (*People* v. *Howk*, 56 Cal.2d 687, 706-707 [16 Cal. Rptr. 370, 365 P.2d 426].) However, after our examination of the entire record of the case we have determined it is highly improbable that a different verdict would have been reached if the court had given the jury such an instruction. (*People* v. *Howk*, *supra*; *People* v. *Holbrook*, 45 Cal.2d 228, 234 [288 P.2d 1].)

Defendant challenges the sufficiency of the evidence. Before a jury's verdict can be set aside on this ground it must appear that, upon no hypothesis whatever, is there sufficient substantial evidence to support the jury's determination. And, we must assume, in favor of the verdict, the existence of every fact which could reasonably have been deduced from the evidence. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) Applying this test, we conclude that the evidence was amply sufficient to sustain defendant's conviction.

Finally, defendant contends it was prejudicial error, and a violation of his constitutional rights, for the prosecutor to comment upon, and the trial court to instruct, on the failure of defendant to take the stand. This same contention was raised and rejected in *Adamson* v. *State of California*, 332 U.S. 46, 57 [67 S.Ct. 1672, 91 L.Ed. 1903, 1911, 171 A.L.R. 1223, 1231].

Judgment of conviction is affirmed.

Burke, P. J., and Kingsley, J., concurred.