[Crim. No. 2216.   Fourth Dist.   July 27, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN JOE VALLARTA, Defendant and Appellant.

John Joe Vallarta, in pro. per., and Jack Boggust, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David S. Sperber, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—Defendant was indicted and convicted of the offenses of selling heroin and of possession of heroin for sale, i.e., violations, respectively, of sections 11501 and 11500.5

of the Health and Safety Code; received consecutive prison sentences; and appeals.

Reversal of the judgment is sought upon two grounds, *viz*, alleged errors (1) in admission into evidence of extrajudicial incriminating statements by the defendant; and (2) in imposing consecutive sentences.

On August 25, 1964, in Brawley, California, an undercover agent for the State Bureau of Narcotic Enforcement, accompanied by an informer, contacted the defendant; engaged the latter in conversation concerning his narcotic activities; negotiated a purchase of heroin from him; bought 10 bindles which defendant removed from a paper sack in a blue satchel which he was carrying; inquired concerning how many bindles he had left and received the reply, ''Two Hundred forty, all the same. I figure I will get $600, and then with your money, we'll really do business''; prevailed upon defendant to sell an additional 10 bindles, which he was reluctant to do for the reason, as he said, ''. . . I need these in San Francisco because I know a lot of people there''; and, after the defendant had left, met with another state agent and a federal customs agent, pursuant to prearrangement, to whom the conversation with defendant was related and information as to the quantity of bindles of heroin remaining in the blue satchel was reported. Thereupon the state agent and the customs agent proceeded to look for defendant; located him at a gas station in Westmorland, which is about 7 miles from Brawley, identified themselves; asked the defendant if they could search him, in response to which he consented, stating he did not have anything; conducted such a search and found a bindle of heroin in one of his pockets; and thereupon arrested him, searched the blue satchel, and found 90 bindles of heroin.

The two officers making the arrest transported defendant to Brawley where they turned him over to a deputy sheriff in charge of the Juvenile Bureau, with instructions to transport defendant to the county jail and have him booked for narcotic violations. On the trip between Westmorland and Brawley defendant volunteered the statement, ''this was just like the movies''; in response to a question by the officers as to what type of movie, replied ''Two or three minutes more, I would have made it. I would have got away. I already had a ride with a semi-truck driver. He went to drink a Coke. Just like the movies. I would have got away in another two or three minutes''; then asked the state agent what ''he would

get for this and what should he do", in response to which he was told that the officer did not know what he would get for it and was advised to get an attorney and "tell the attorney the entire truth and go from there"; then told the officers that his "biggest weapon" was that he had not been a user of narcotics and "was not known to the local police department as such"; and concluded his remarks by stating that "he didn't really have to worry; that he was going to beat this case" because the officers had searched him without a warrant, which was illegal.

The deputy sheriff, accompanied by a juvenile in custody, transported defendant to the county jail. On the way the deputy, who knew defendant, asked him: "What did you get busted for?"; received the reply: "Man, you're heat. I don't have to tell you anything"; in response, remarked: "That's right, Johnny, that's your right"; and did not say anything further. However, "pretty soon" defendant started laughing and said: "Man, this was just like the movies"; in answer to the officer's question, "What was just like the movies, Johnny?", told the same story he had told the arresting officers on the ride to Brawley; added that the "guys" who arrested him were real smart because they got him, to which the deputy retorted: "You're nothing. I don't see anything so special about you"; whereupon the defendant said "Man, I am the biggest narcotic pusher there is in Imperial County", which he repeated, and added: "I push more stuff in Imperial County than anybody else"; then, appreciating the significance of his statement, asked the deputy: "Are you going to testify against me in court"; and, upon receiving an affirmative reply, stated: "Well, I am going to deny all this. I am going to say I had all this stuff for my own use."

At the trial defendant denied making the sale in Brawley to the undercover agent; denied that the officers at Westmorland removed a bindle of heroin from his clothing; also denied there was any heroin in the blue satchel, which he admitted owning; and claimed that upon their search of the satchel the officers did not remove any heroin therefrom nor indicate they had found any therein.

The court admitted into evidence the statements made by defendant to the officers during his trips from Westmorland to Brawley and from Brawley to the county jail. Defendant contends that, under the rule in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], this was revers-

ible error. This contention is without merit for two reasons, *viz*, (1) the statements were volunteered by him rather than the product of a process of interrogation by the officers; and (2) were made under circumstances indicating a waiver of his right to be represented by counsel and to remain silent.

The exclusionary rule in *People* v. *Dorado, supra,* 62 Cal.2d 338, is directed to incriminating statements made by a defendant during the accusatory stage of the proceedings where he previously had not been advised of his rights to counsel and to remain silent, and there is no showing of other circumstances indicating that in making the statements he waived these rights. To have been made during the accusatory stage, the statements must be the product of a process of interrogation that lends itself to eliciting such. (*Escobedo* v. *Illinois,* 378 U.S. 478, 485, 491 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People* v. *Dorado, supra,* 62 Cal.2d 338, 348; *People* v. *Stewart,* 62 Cal.2d 571, 577-579 [43 Cal.Rptr. 201, 400 P.2d 97].) The statements by defendant, both to the officers who had arrested him and to the officer transporting him to the county jail, were not elicited by any process of interrogation; instead, were the brash boasting of a braggart; were volunteered rather than solicited; and are not governed by the exclusionary rule. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 354; see also *People* v. *Estrada,* 234 Cal. App.2d 136, 160 [31 Cal.Rptr. 165]; *People* v. *Clapper,* 233 Cal.App.2d 34, 37 [43 Cal.Rptr. 105]; *People* v. *Ulibarri,* 232 Cal.App.2d 51, 55 [42 Cal.Rptr. 409].)

Furthermore, the statements at hand were made under circumstances establishing a waiver by defendant of his rights to counsel and to remain silent. He knew of these rights; was told by one of the officers who arrested him that he should obtain an attorney and seek his advice in the premises; in turn, told the officer transporting him to the jail that he did not have to say anything; was assured that he had this right; and nevertheless made the statements heretofore noted. Incriminating statements by an accused made under circumstances indicating he has a knowledge and awareness of his rights to counsel and to remain silent and that he voluntarily and intelligently elects to refrain from asserting those rights are not subject to exclusion under the *Dorado* rule. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 352-353; *People* v. *Garner,* 234 Cal.App.2d 212, 225 [44 Cal. Rptr. 217]; *In re Schlette,* 232 Cal.App.2d 407, 411-413 [42 Cal.Rptr. 708].) The defendant here knew he

could remain silent; was advised to get an attorney; displayed an awareness of these rights; professed a knowledge of the law governing search and seizure and other matters indicating his mental capacity to make an intelligent waiver; and appreciated the effect of making the statements in question as evidenced by his declaration that he would deny having made them.

Defendant claims that the court erred in imposing consecutive sentences for the two offenses of which he was convicted, contending that they were the product of a single course of conduct and, under the rule in *Neal* v. *State of California,* 55 Cal.2d 11, 18 [9 Cal.Rptr. 607, 357 P.2d 839], were not subject to multiple punishments. His sale of 20 bindles of heroin to the undercover agent at Brawley had nothing to do with his possession of 91 bindles at Westmorland. ▮ Whether a course of conduct during which two offenses are committed is singular or divisible, for the purpose at hand, depends upon the intent and objective of the actor. (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 19; *People* v. *McFarland,* 58 Cal.2d 748, 760 [26 Cal.Rptr. 473, 376 P:2d 449].) ▮ The defendant's intent and objective in possessing and selling 20 bindles to the undercover agent and his intent and objective in possessing the 91 bindles taken from him at the time of his arrest, which he said he was holding for sale to people in San Francisco, were wholly unrelated. The imposition of consecutive sentences for the subject offenses was proper. (*People* v. *Rodriguez,* 202 Cal.App.2d 191, 197 [20 Cal.Rptr. 56]; *People* v. *Wallace,* 199 Cal.App.2d 678, 681 [18 Cal.Rptr. 917]; *People* v. *Tenney,* 162 Cal.App.2d 458, 463 [328 P.2d 254].)

The judgment is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 7, 1965.