[Crim. No. 13032.   Second Dist., Div. Five.   Sept. 6, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ERNEST RAY SHELDON, Defendant and Appellant.

Daniel L. Dintzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Michael J. Smolen, Deputy Attorney General, for Plaintiff and Respondent.

HUFSTEDLER, J.—Appellant, Ernest Ray Sheldon, and his codefendant, Ashenbrenner, were charged by information with violating section 11501 of the Health and Safety Code (sale of heroin). Both men were also charged in a separate information with violating section 11531 of the Health and Safety Code (sale or furnishing of marijuana) and section 11530.5 of the Health and Safety Code (possession of marijuana for sale). Upon Sheldon's motion the two cases were consolidated and after consolidation the alleged violation of section 11501 of the Health and Safety Code was referred to as "Count I." The violations of sections 11531 and 11530.5 were referred to as "Count II" and "Count III," respectively. Sheldon was arraigned, pleaded not guilty, and was released on bail pending trial. When the case was called for trial Sheldon, who had fled to Colorado, did not appear. The bail was ordered forfeited and a bench warrant was issued for his arrest. Sheldon was returned by extradition and the cause proceeded to trial.

The jury found Sheldon guilty of violating section 11531 (count II) and section 11530.5 (count III), but the jury was unable to agree on count I, as to which a mistrial was declared. Sheldon's motion for a new trial was denied on June 27, 1966, probation was denied, and Sheldon was sentenced to the term prescribed by law. Sheldon appeals from the judgment of conviction.

Sheldon raises the following points on appeal: (1) The evidence is insufficient to support the conviction of violating section 11531 of the Health and Safety Code; (2) the trial court

erred in denying Sheldon's request for three jury instructions relating to the effect of circumstantial evidence; (3) the trial court erred in failing to charge the jury that a violation of section 11530.5 was a lesser offense necessarily included within a violation of section 11531; (4) the trial court erred in failing to charge the jury that appellant's flight was not sufficient in itself to establish his guilt; and (5) the prosecutor was guilty of prejudicial misconduct in his closing arguments to the jury because his remarks were an expression of the prosecuting attorney's personal belief in the unreliability of Sheldon's testimony.

## Summary of the Evidence

Gerald W. Nice, a state narcotic agent, was conducting an undercover narcotic investigation of Sheldon and Ashenbrenner. Negotiations for the purchase of some heroin were commenced in April of 1965 between Nice and Ashenbrenner. There followed a series of arranged meetings between Nice, Ashenbrenner, Sheldon and another man, all relating to the heroin buy. We omit the details of the evidence relating to the sale of heroin, with which we are not now concerned. After the heroin negotiations concluded, Nice had another telephone conversation with Ashenbrenner on June 23, 1965. Nice told Ashenbrenner that he wanted to buy 15 kilos of marijuana, and Ashenbrenner replied that he was ''sitting on'' 50 kilos and that he could make delivery in 45 minutes. Nice told Ashenbrenner that he did not know exactly how many kilos he wanted because he had to get some more money and that he would call Ashenbrenner back. Nice did call him back and told him that he had enough money for 25 kilos and that Ashenbrenner could deliver the marijuana to his motel room in South Gate. Nice and another narcotics agent rented adjoining motel rooms in South Gate. On the evening of June 23 Ashenbrenner and Sheldon came to the motel. Nice introduced the two men to Agent Reed and told them that Reed would buy 10 kilos of marijuana at $110 a kilo, but Nice wanted the straight price of $100 per kilo. Ashenbrenner and Sheldon both said that some of the packages would be light and some of them heavy. Nice told Sheldon and Ashenbrenner that he wanted to weigh the marijuana. Sheldon testified that he asked Ashenbrenner to go out and get the marijuana ''because I didn't want to stay in the room any longer.'' Ashenbrenner left the room, returning in about three minutes with a large brown box. He removed one of the packages from within the box and placed it on a scale on the bed. Sheldon said, ''It's

real good weight. They're small stems in it, that you get about three-fourths weed and about one-fourth seeds and stem." Nice counted the kilos in the box and said, "There's only 19 here." Ashenbrenner replied, "Well, there is about that many more in the car in a barracks bag." Nice thereupon placed both men under arrest and admitted the covering agents from the adjoining apartment into the room. Nice "advised Mr. Sheldon and Mr. Ashenbrenner together of their rights to an attorney, their right to remain silent, and anything that they said could be used against them in court." Nice asked Sheldon if he understood and he nodded.

After Sheldon and Ashenbrenner were arrested, Nice retrieved the barracks bag from Sheldon's station wagon. In the barracks bag were found 16 packages of marijuana, each package containing bricks of marijuana. The brown box containing 19 packages of marijuana and the barracks bag containing the 16 packages of marijuana were turned over by Nice to Agent William J. Arnold, a forensic chemist. Arnold examined the contents of the packages delivered to him by Nice and expressed the opinion that the substance was marijuana. The total weight of all of the packages was approximately 60 pounds.

Sheldon attempted to defend himself by claiming that he was simply a bystander in the narcotics negotiations. He insisted that he had no interest in the marijuana and that he was not to receive any profits from the sale. At the same time, however, Sheldon testified that he transported the marijuana from Ashenbrenner's scuba-diving shop to the motel in his automobile and that he knew the box and bag contained marijuana. Although he said he had no financial interest in the sale of the marijuana, he admitted that he had loaned Ashenbrenner some $1,500 to restock his scuba-diving shop in January of 1965 and that Ashenbrenner had told Sheldon prior to the sale, that if the sale were completed, Ashenbrenner would give him about $500 of the money that he owed Sheldon.

On cross-examination Sheldon admitted that he fled the state after he was charged with the offenses for which he was on trial. On redirect examination Sheldon's defense counsel asked him why he left the state and went to Colorado, and he replied that one of the reasons was "because while I was incarcerated here in Los Angeles County Jail, I discussed my case with various people, and they told me that I wouldn't have any justice; that being a narcotic case, that my presence on the scene of these sales, would automatically convict me to

a 10 to life sentence, meaning that I wouldn't see a Parole Board for ten years; and needless to say, this scared me; and I couldn't see where I could prove my innocence. Consequently, I ran in fear, sir.'' In reply to his counsel's question, ''Do you consider yourself guilty, sir, of the charge of possessing for sale?'' Sheldon answered, ''Yes, sir.'' On recross examination the prosecuting attorney asked him, ''Did you also run because you thought you might be guilty of these counts?'' The defendant replied, ''No. sir.''

### Sufficiency of the Evidence

■ Sheldon argues that the evidence was insufficient to convict him of violating section 11531 of the Health and Safety Code because, he says, there was no proof that any sale of marijuana was consummated. Section 11531 and the information charging Sheldon with violating that section encompass not only sale but furnishing and giving away marijuana as well. It was unnecessary to prove that any consideration changed hands in order to establish Sheldon's guilt of the offense charged. (*E.g., People* v. *Stenchever* (1967) 249 Cal. App.2d 74, 78 [57 Cal.Rptr. 14]; *People* v. *Blunt* (1966) 241 Cal.App.2d 200, 204 [50 Cal.Rptr. 440]; *People* v. *Hutcherson* (1961) 197 Cal.App.2d 771, 779 [17 Cal.Rptr. 636].)

■ Sheldon also argues that he was only a casual bystander who happened to be on the scene of his codefendant's narcotics negotiations. The argument is contradicted by the record. Sheldon was actively involved throughout the negotiations with the undercover agents. According to his own testimony he told his codefendant to go out to his car and get the marijuana. He boosted his product, describing the packages brought into the motel room as ''real good weight,'' and told Nice that he would get ''about three-fourths weed and about one-fourth seeds and stem.'' He admitted that he anticipated receiving $500 from his codefendant if the sale were completed.

### Claimed Error in Instructions

■ The court did not err in refusing Sheldon's request for three instructions based on CALJIC numbers 26, 27 and 28 relating to the duty of the jury in considering circumstantial evidence in a case in which the prosecution relies primarily upon such evidence to prove one or more facts essential to sustain the conviction.[1] Those instructions need not be

[1] We do not have before us the refused instructions, which were not made part of the record on appeal.

given where the prosecution does not thus rely on circumstantial evidence or where circumstantial evidence is merely incidental to or corroborative of the direct evidence. (*People* v. *Blankenship* (1959) 171 Cal.App.2d 66, 84 [340 P.2d 282]. See also *People* v. *Malbrough* (1961) 55 Cal.2d 249, 250-251 [10 Cal.Rptr. 632, 359 P.2d 30].) Resort to circumstantial evidence was not essential in this case. All of the facts necessary for conviction were proved by direct evidence, including Sheldon's own testimony, and any circumstantial evidence introduced was solely incidental to or corroborative of that direct evidence.

■ Sheldon's complaint that the trial court erred in failing to instruct the jury in accordance with section 1127c of the Penal Code that the flight of the accused is not sufficient in itself to establish guilt, but is a fact which the jury may consider in deciding guilt or innocence is well taken.[2] "While the instruction on flight should have been given by the court on its own motion, we do not believe that failure to give such an instruction was harmful to appellant. Rather do we believe that its omission was more favorable than harmful to him." (*People* v. *Williams* (1960) 179 Cal.App.2d 487, 491 [3 Cal.Rptr. 782].) The evidence of Sheldon's guilt, entirely apart from the evidence regarding his flight, was overwhelming. Under these circumstances the court's failure to instruct the jury on flight could not have had any effect upon the jury's ultimate determination.

■ The court did not err in failing to instruct the jury on its own motion that the charge of possession for sale was necessarily included within the charge of sale, furnishing for sale, or giving away marijuana. Possession for sale is not invariably included in a charge of furnishing narcotics. (*People* v. *Blunt*, *supra*, 241 Cal.App.2d 200, 203.) ■ Even where the evidence is unmistakably clear that the defendant did possess marijuana for sale, the court should not instruct the jury that the defendant's possession for sale is necessarily

---

[2]§ 1127c. [Instructions as to evidence of flight.] In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows:

The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine.

No further instruction on the subject of flight need be given.

included in a charge of selling, offering to sell or furnishing marijuana, if the evidence also shows that the accused possessed marijuana apart from and in addition to that which he sold, furnished or offered to sell and that his possession of the additional marijuana continued after the negotiations for the sale or offer to sell a part of it were concluded. For example, in *People* v. *Mateo* (1959) 171 Cal.App.2d 850 [341 P.2d 768], the marijuana sold to an undercover agent and delivered by automobile to him was only a part of the seller's stock in trade. The main stock was maintained in the vendor's house. His possession of the stock continued after the agent made his buy. The court said, ''None of this additional marijuana was incidental to the sale. It is well established that where the only possession shown is necessarily incidental to its sale or furnishing[,] separate convictions for sale and possession cannot be had. (*People* v. *Taylor* (1958) 159 Cal.App.2d 752 [324 P.2d 715]; *People* v. *Castiel* (1957) 153 Cal.App.2d 653, 660 [315 P.2d 79].) In those cases the same narcotics were involved in the multiple counts. But conviction may be had where the narcotic possessed is separate and distinct from that sold. (*People* v. *Holliday* (1953) 120 Cal.App.2d 562, 564 [261 P.2d 301].) Here the marijuana left in the house was separate and distinct from that sold. Hence separate convictions for sale and possession were proper.'' (171 Cal.App.2d at p. 857. See also *People* v. *Roland* (1960) 183 Cal.App.2d 780, 785 [6 Cal.Rptr. 895].)

In the case at bench Sheldon possessed for sale not only the marijuana in the brown box (about 33 pounds) delivered to the motel room but also the marijuana in the barracks bag (about 27 pounds) left in his car. Sheldon could not have been convicted of both possession for sale and offering to sell or furnishing the marijuana in the brown box, because his possession of that marijuana was necessarily incident to furnishing or offering it for sale. But Sheldon was properly convicted separately of possession for sale of the marijuana in the barracks bag, which possession was distinct from the possession of the marijuana furnished or offered for sale in the brown box.

█ Even though Sheldon was properly convicted on both counts, he could not be sentenced on both counts if his possession for sale and his furnishing marijuana were a part of an indivisible course of criminal conduct. (Pen. Code, § 654; *In re Wright* (1967) 65 Cal.2d 650, 652 [56 Cal.Rptr. 10, 422 P.2d 998]; *People* v. *McFarland* (1962) 58 Cal.2d 748, 760

[26 Cal.Rptr. 473, 376 P.2d 449] ; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19-20 [9 Cal.Rptr. 607, 357 P.2d 839].) The divisibility of the transaction depends in part upon Sheldon's intent and objective. His possession of the marijuana in the brown box cannot be separated from the offer to sell. The question remains whether the possession of the marijuana in the barracks bag was a separate or an indivisible part of the course of criminal conduct involved in attempting to sell the marijuana to Nice. From the evidence in this case it is apparent that Sheldon and Ashenbrenner intended to offer for sale and to deliver all of the marijuana Nice was willing to buy from their stock. Neither of them distinguished the contents of the bag from the contents of the box for this purpose. When there was not enough marijuana in the box to fill Nice's order for 25 kilos, Ashenbrenner told Nice that the additional marijuana was available in the bag. Under these particular circumstances it cannot be said that possession of the marijuana in the bag can be successfully divided from the offer to sell the marijuana in the box. The contents of both bag and box were to be used to fill the order, and one continuous course of criminal conduct was therefore involved. Sentencing Sheldon on both counts was thus a violation of section 654 of the Penal Code. ■ The appropriate appellate procedure to correct the error is "to eliminate the effect of the judgment as to the less severely punishable offense insofar as penalty alone is concerned." (*In re Wright, supra,* 65 Cal.2d 650.)

### Claimed Misconduct of Prosecuting Attorney

Sheldon urges that the prosecuting attorney committed prejudicial misconduct by expressing his personal opinion of Sheldon's credibility in his closing argument to the jury.[3] He recognizes, however, that the claimed misconduct cannot be

---

[3] "This is a case where the evidence is extremely powerful, and I am going to tell you what I believe is the reason why this defendant got up on the witness stand under oath in front of the jury of 12 people and confessed to a crime or two crimes, and I will tell you what I believe is the reason by getting up here and telling you, 'Well, I'm not guilty of selling heroin, and I am not guilty of selling marijuana,' although I am going to argue that I think he made a confession to two counts, and 'I'm guilty of possessing marijuana for sale.'

"He is attempting to get a deal from you. He is attempting to elicit your sympathy, and he is saying well by being bold and by confessing to one count, the jury might let me off on Counts I and II because he knows as well as you know that, as well as I know, as well as everybody knows who heard this evidence, that this is a strong case. This is a strong case."

assigned as error on appeal because it was not assigned as error at the time of trial unless the case falls within the clearly defined exceptions to the general rule. ▆▆ " 'The general rule regarding misconduct of the district attorney which tends to and is likely to result in prejudice to the defendant is that where no objection is made to such misconduct by the defendant, or where objection is made and the court sustains the objection and properly admonishes the jury, the misconduct claimed to be prejudicial to defendant's rights will not furnish grounds sufficient to justify the granting of a new trial or the reversal of the judgment. [Citation.] ▆▆ There are two exceptions to this general rule. One is where the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict, a miscarriage of justice results requiring a reversal. [Citation.] The other exception is where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court. In such cases the misconduct will furnish ground for a reversal of the judgment, even where proper admonitions are given by the court.' " *People* v. *Lyons* (1958) 50 Cal.2d 245, 262 [324 P.2d 556]. (*People* v. *Perez* (1962) 58 Cal.2d 229, 247 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946].) ▆▆ Assuming *arguendo* that the prosecuting attorney's remarks did exceed the bounds of proper comment on the evidence, Sheldon cannot complain about them on appeal because the case was not closely balanced, there was no "grave doubt of defendant's guilt," the alleged misconduct was not "such as to contribute materially to the verdict" and the harm, if any, could have been obviated by a timely admonition by the court. (*People* v. *Perez, supra,* 58 Cal.2d at p. 247.)

The judgment recited, "Whereas the defendant having been duly found guilty in this court of the crime of violation of section 11530.5, Health and Safety Code, a felony, as charged in *Count 2* of the information, and violation of section *11501,* Health and Safety Code, as charged in *Count 3.*" [Italics added.]

As the People have pointed out in their brief on appeal, the references to the violation of section 11530.5 as "Count 2" and to violation of section 11501 are obviously wrong. The violation of section 11530.5 was charged as count 3, not count 2. Sheldon was not convicted of violating section 11501 (count 1) ; a mistrial was declared on that charge. He was convicted

of violating section 11531 (count 3). These mistakes are the result of clerical inadvertence and not the result of the exercise of judicial advertence. (See *People* v. *Schultz* (1965) 238 Cal.App.2d 804, 806-808 [48 Cal.Rptr. 328].)

The judgment is reversed insofar as it imposes a concurrent sentence for violation of section 11530.5 of the Health and Safety Code (possession of marijuana for sale) with instructions to correct the clerical errors in the judgment and to sentence in a manner consistent with this opinion; in all other respects the judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 1, 1967.