[Crim. No. 12801.   Second Dist., Div. Three.   Sept. 22, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN EDGE ALLEN, JR., Defendant and Appellant.

Bruce P. Wolfe for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

MOSS, J.—Defendant was convicted of violations of section 11911 (possession for sale of dangerous drugs) and section

11912 (offering to sell a dangerous drug) of the Health and Safety Code.[1] He was sentenced to state prison for each offense, the sentences to run concurrently. On this appeal from the judgment we consider whether (1) there was sufficient evidence to support the finding of guilt as to each offense, (2) the contraband found in defendant's truck was found as the result of an illegal search, and (3) the imposition of sentences for each offense violates the prohibition of Penal Code, section 654 against multiple punishment.

Sections 11911 and 11912 were enacted in 1965,[2] as part of division 10.5 of the Health and Safety Code, a new division relating to restricted dangerous drugs as defined therein. The definition includes benzedrine, the contraband here involved. Sections 11911 and 11912 define the crimes created thereby in the same language that is used to define comparable offenses in division 10 of the Health and Safety Code relating to narcotics.[3] Therefore, the precedents which have established the elements of the crimes of possession for

[1] All code references are to the Health and Safety Code unless otherwise specified.

[2] Statutes 1965, chapter 2030, pages 4603 et seq.

[3] The relevant portions of sections 11911 and 11912 and the comparable sections of division 10 are as follows:

Section 11911: ''Except as otherwise provided . . ., every person who possesses for sale any restricted dangerous drug shall be punished by imprisonment in the state prison for not less than one year nor more than three years, or by imprisonment in the county jail not exceeding one year.''

Section 11500.5: ''Except as otherwise provided in this division every person who possesses for sale any narcotic other than marijuana shall be punished by imprisonment in the state prison for not less than five nor more than 15 years. . . .''

Section 11530.5: ''Every person who possesses for sale any marijuana except as otherwise provided by law shall be punished by imprisonment in the state prison for not less than two years nor more than 10 years. . . .''

Section 11912: ''Except as otherwise provided . . ., every person who . . . offers to transport, import into this state, sell, manufacture, compound, furnish, administer, or give away . . . any restricted dangerous drug except upon the prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state shall be punished by imprisonment in the state prison for not less than one year nor more than five years, or by imprisonment in the county jail not exceeding one year.''

Section 11501: ''Except as otherwise provided in this division, every person who . . . offers to transport, import into this State, sell, furnish, administer, or give away . . . any narcotic other than marijuana . . . shall be punished by imprisonment in the state prison from five years to life. . . .''

Section 11531: ''Every person who . . . offers to transport, import into this state, sell, furnish, administer, or give away . . . any marijuana shall be punished by imprisonment in the state prison from five years to life. . . .''

sale of narcotics (sections 11500.5 and 11530.5) and offering to sell narcotics (sections 11501 and 11531) are applicable here.

James L. Farrar, a police officer assigned to the Narcotics Detail of the Torrance Police Department, arrested Andy Miller on December 16, 1965, for possession of dangerous drugs and narcotics. During an interrogation Miller told Officer Farrar that he had purchased the drugs from a person known to him as ''Spike.'' Miller described Spike as being approximately 5 feet, 8 inches, 145 pounds, black hair, and always wearing horn rimmed glasses. Miller told the officer that Spike drove a gray-blue Volkswagen panel truck. Miller stated that he had bought benzedrine tablets from Spike on numerous occasions, and offered to make a call in order to prove that he was telling the truth.

The officer dialed the number given by Miller and the conversation which ensued was monitored and recorded. Spike answered the phone. Miller said, ''I would like to make it for eight jars.'' Officer Farrar, who was an expert on dangerous drugs, stated that ''jars'' meant a quantity of 1,000 pills and that ''I want to make it'' meant, ''I want to acquire or purchase the object in question.'' Spike then replied that he had eight jars and would meet Miller at Sarna's, a bar located in Culver City.

The officers traced the phone number to defendant's address, 3829½ Westwood in Culver City. They went to that address where they learned from a surveillance officer that a ''female'' and a ''male subject'' answering the description of Spike had been seen alighting from a Volkswagen truck, had entered the Westwood address, had not left the residence, nor had anyone entered the truck. Prior to this time the officers had made a license check on the Volkswagen truck through the Department of Motor Vehicles. The check had revealed that the vehicle was registered to a John E. Allen, the defendant.

Officer Farrar knocked on the door at the Westwood address and identified himself to the party who answered. The officer then inquired if that person was Spike, to which the party replied, ''Yeah, come on in.'' Farrar testified that at the time he recognized defendant's voice as being the same voice which he had heard during the monitored phone conversation. Farrar then arrested defendant.

Officer Farrar went to the Volkswagen which was parked approximately 15 yards from defendant's front door. Prior to

entering the officer saw two paper sacks, rolled with rubber bands, in the glove compartment, which was open to Farrar's view because it had no door on it. The officer testified that he had seen dangerous drugs similarly wrapped before. He then searched the car and found approximately 100 packages, each containing 1,000 "white double-scored tablets" inside the glove compartment, and a package of rubber bands in assorted colors. The tablets were amphetamine sulphate, also known as benzedrine.

*Sufficiency of the Evidence—Offer to Sell*

There was sufficient evidence to sustain the conviction for offering to sell dangerous drugs in violation of section 11912.

██ Like violations of the comparable sections of the code dealing with narcotics, a violation of section 11912 is complete when a person offers to sell the proscribed drugs, with a specific intent to make a sale. (*People* v. *Brown,* 55 Cal.2d 64, 68 [9 Cal.Rptr. 816, 357 P.2d 1072] [§ 11501]; *People* v. *May,* 224 Cal.App.2d 436, 439 [36 Cal.Rptr. 715] [§ 11531].) Delivery is not an essential element of the offense of offering to sell a dangerous drug. (*People* v. *Jackson,* 59 Cal.2d 468, 469 [30 Cal.Rptr. 329, 381 P.2d 1].)

██ Officer Farrar overheard the conversation in which defendant offered to sell Miller "eight jars." The officer knew that "jars" in narcotics parlance meant a quantity of 1,000 pills. After arresting defendant, the officer discovered 100,000 benzedrine pills in the defendant's truck. In view of defendant's telephone statements, "Yeah, I have got them [the jars]," and that he could be at the bar "in a few seconds," the absence of any compelling evidence that defendant's offer was false or insincere, and the evidence that defendant possessed a large quantity of benzedrine pills, the trial court could reasonably conclude that defendant had meant what he had said to Miller when he offered to sell Miller the eight jars of benzedrine.

*Sufficiency of the Evidence—Possession for Sale*

██ There also was sufficient evidence to sustain defendant's conviction for unlawful possession of drugs in violation of section 11911. The elements of the offense of possession for sale of dangerous drugs are the same as those for the offense of possession of narcotics: (1) possession of the dangerous drug, (2) for the purpose of selling it. (*People* v. *Bravo,* 237 Cal.App.2d 459, 461 [46 Cal.Rptr. 921] [§ 11500.5]; *People* v. *Robbins,* 225 Cal.App.2d 177, 183-184 [37 Cal.Rptr. 244]

[§ 11500.5].) Actual possession of the drug is not required. Constructive possession may be proven by circumstantial evidence. (*People* v. *Luke*, 233 Cal.App.2d 793, 796 [43 Cal. Rptr. 878].) Therefore, all that need be proven is that the contraband was deposited in a place under defendant's possession and control. (*People* v. *Luke*, *supra*, 233 Cal.App. 2d 793, 796; *People* v. *Vice*, 147 Cal.App.2d 269, 274 [305 P.2d 270].)

■ The benzedrine pills were found in a car registered in defendant's name. A person matching his description was seen leaving the truck shortly before defendant's arrest. No other person entered the truck in the interim. The truck was parked close to defendant's residence. The fact that the glove compartment containing the contraband was open supports the inference that defendant, who had recently driven the truck, was aware of the compartment's contents. There were 100,000 pills and a package of rubber bands seized in the truck. Officer Farrar testified that in his experience as a narcotics officer the large quantity of drugs, packaged in "jar" form, indicated that they were intended for sale rather than for use. There was, therefore, ample evidence to support the trial court's conclusion that the drugs were possessed by defendant for the purpose of sale. (*People* v. *Robbins*, *supra*, 225 Cal.App.2d 177, 183-184.)

*The Legality of the Search*

■ The search of defendant's truck followed the arrest and was based on probable cause. Officer Farrar had been assigned to the narcotics detail for approximately three years, had undergone formal training with respect to narcotics, and had qualified as an expert on the subject of possession of dangerous drugs on at least three occasions in the superior court.

At the time of the search Officer Farrar knew that the truck was registered to defendant, that defendant had been observed alighting from the truck and entering his residence, and that no one else had entered the truck in the interim. Having placed defendant under arrest for offering to sell dangerous drugs, it was reasonable for the officer to believe that the packages which he observed in the truck contained contraband, especially in view of the similarity in the manner in which they were wrapped to the manner in which dangerous drugs are customarily wrapped. Viewing the contraband from outside the truck did not constitute a search. (*People* v.

604

*Martin,* 45 Cal.2d 755, 762 [290 P.2d 855].) Under these circumstances he was not required to obtain a search warrant before searching the vehicle. (*People* v. *Terry,* 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381].) Having seen what reasonably appeared to be contraband, the officer was entitled to act upon what he saw.

In view of the fact that the officer was entitled to conduct a search of the truck based upon what he observed in plain view, it is unnecessary for us to deal with the question of whether the search was incidental to defendant's arrest.

■ Defendant's contention that Officer Farrar's testimony as an expert was improperly received in this regard is without merit. It is for the trial court to determine the qualifications of an expert. Any question as to the degree of his knowledge is a matter affecting the weight of the evidence, not its admissibility. (*People* v. *Lewis,* 206 Cal.App.2d 82, 85 [23 Cal.Rptr. 495] ; *People* v. *Penny,* 44 Cal.2d 861, 865 [285 P.2d 926].) ■ The training and experience of Officer Farrar, discussed earlier, fully justified the trial court's conclusion that he was sufficiently familiar with the vernacular and practices of the narcotics trade to be able to testify on these issues.

*Multiple Sentences*

■ Defendant's contention that the imposition of concurrent sentences for the two convictions violates section 654 of the Penal Code is not well taken. Section 654 of the California Penal Code provides in pertinent part as follows: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under each of such provisions. but in no case can it be punished under more than one; . . ."

The basic principle that forbids multiple punishment for one criminal act precludes infliction of more than one punishment for a series of acts directed toward one criminal object. (*In re Johnson,* 65 Cal.2d 393, 395 [54 Cal.Rptr. 873, 420 P.2d 393] ; *Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].) There is nothing in the record to show that the intended sale of 8,000 pills to Miller was incidental to defendant's possession of the remaining 92,000 pills. (*People* v. *Rodriguez,* 202 Cal.App.2d 191, 197 [20 Cal.Rptr. 556] ; *People* v. *Wallace,* 199 Cal.App.2d 678, 681 [18 Cal.Rptr. 917] ; *People* v. *Tenney,* 162 Cal.App.2d 458, 463 [328 P.2d 254] ; *People* v. *Holliday,* 120 Cal.App.2d 562, 565 [261 P.2d 301] ; see also *People* v. *Vallarta,* 236 Cal.App. 2d 128, 133 [45 Cal.Rptr. 631].)

This case is distinguished on its facts from those in which the two acts which constituted a violation of the narcotics laws were part of a single transaction. (See for example *In re Johnson, supra*; *People* v. *Roberts,* 40 Cal.2d 483, 491 [254 P.2d 501]; *People* v. *McDaniel,* 154 Cal.App.2d 475, 485 [316 P.2d 660]; *People* v. *Branch,* 119 Cal.App.2d 490, 496 [260 P.2d 27].)

The judgment is affirmed.

Ford, P. J., and Cobey, J., concurred.