[Crim. No. 17440. Second Dist., Div. Four. Aug. 24, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES JOSEPH FORTIER, Defendant and Appellant.

**COUNSEL**

Joe Reichmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Alan V. Hager, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**KINGSLEY, J.**—Defendant was charged in count I with possession of marijuana for sale (Health & Saf. Code, § 11530.5), count II with possession of a restricted dangerous drug for sale (Health & Saf. Code, § 11911), count III, sale of marijuana (Health & Saf. Code, § 11531), count IV, sale of restricted dangerous drugs (Health & Saf. Code, § 11912); a prior conviction for violation of section 11500 of the Health and Safety Code was added.

Defendant was found guilty on all counts; the court made no finding on the prior conviction. On count I, defendant was sentenced to state prison for

the term prescribed by law; as to counts II, III, and IV, defendant was sentenced to state prison for the term prescribed by law, sentences were suspended and summary probation was granted for five years, to run concurrently with count I. The court reserved jurisdiction to reinstate the sentences as to counts II, III and IV if defendant is released from the custody of the Department of Corrections.

This is an appeal from the judgment of conviction; we affirm the judgment.

A confidential informant, who had given information in the past, showed Officer Villalba the location of an apartment and told the officer that a person named Carl was dealing in narcotics and dangerous drugs within that apartment. The apartment was placed under surveillance, and, on September 17, 1968, at about 9 p.m., Undercover Officers Postelle and Norma Day, and a girl named Angel, (an informer Officer Postelle met for the first time on that day and whom he had not seen since), went to apartment 22 to make an undercover buy. Officer Postelle knocked; Angel said: "It's Angel. Open up." Officer Postelle purchased from defendant a package of a green leafy substance and some red and blue capsules. The officers were in the apartment about five minutes and Officer Postelle was in a well-lit bedroom with the seller for a couple of minutes. Analysis revealed that the materials purchased were marijuana, amobarbital and secobarbital. The officer described defendant to Officer Villalba as a male Negro, about 40 years old, approximately 6 feet or 6 feet 2 inches tall, and 180 to 190 pounds, who walked with a limp. The undercover officer said that he saw weapons, dangerous drugs and marijuana in the apartment.

At about 11:40 p.m., that same evening, Officers Villalba, Castaneda and McClelland and Sergeant Camacho forced entry into the apartment and saw defendant near two guns. Officer Castaneda and Sergeant Camacho saw defendant throw a black attache case out of the window. The officers arrested defendant, found marijuana and dangerous drugs in the bureau[1] and found marijuana and dangerous drugs in the attache case. According to Officer Villalba these drugs were packaged for sale; his opinion was based on their packaging and quantity.

The following day Officer Postelle saw defendant in a room with a two-way mirror and identified him as the man from whom he had made the narcotic buy the previous day. There were no other suspects present at the preliminary hearing. Officer Postelle identified defendant as the man in the apartment.

---

[1] These were excluded from evidence because not packed for sale.

## I

■ Defendant's first assertion is that the identification by Officer Postelle was inadmissible, on the ground that the in-court identification was tainted by an earlier illegal lineup. (See *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].) Defendant argues that, although a single person showup is not inherently unfair (*People* v. *Floyd* (1970) 1 Cal.3d 694 [83 Cal.Rptr. 608, 464 P.2d 64]), the prosecution in the case at bench did not show by clear and convincing proof that the in-court identification was based on independent observations of the accused at the scene of the sale. (*People* v. *Caruso* (1968) 68 Cal.2d 183 [65 Cal. Rptr. 336, 436 P.2d 336].)

The court below correctly found that there was a sufficient showing that Officer Postelle's in-court identification of defendant was based on a recollection independent of the viewing of defendant in the police building. Officer Postelle was in a well-lit bedroom for a couple of minutes with defendant while he was making "a buy." The officer testified that he knew what defendant looked like prior to seeing him in the police building, and that there was no doubt in the officer's mind, when the officer saw defendant in the police building, as to who defendant was.[2]

*People* v. *Caruso* (1968) 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336], on which defendant relies to show lack of clear and convincing evi-

---

[2]There was some confusion in the officer's answer but it appears clearly in the record that the officer recognized defendant independently of the showup:
"Q. And your identification of Mr. Fortier was based largely on what you saw when you were looking at him when he was in this room with the two-way mirror; is that correct?
"A. In the room at the initial sale.
". . . . . . . . . . . . . .
"THE COURT: When you viewed Mr. Fortier in the police building, did you, prior to seeing him, have an independent recollection of what he looked like?
"THE WITNESS: Yes. I knew what he looked like prior to seeing him in the building.
"THE COURT: Was the purpose of seeing him in the building for the purpose of refreshing your recollection as to what he looked like?
"THE WITNESS: No.
"THE COURT: What was your purpose in viewing him at the police building?
"THE WITNESS: For positive identification.
"THE COURT: Did your testimony at the preliminary where you identified Mr. Fortier depend in whole or in part upon seeing him at the police building?
"THE WITNESS: You want to rephrase that question, Your Honor?
"THE COURT: Your identification you made at the preliminary hearing—you did identify Mr. Fortier at the preliminary hearing, did you not?
"THE WITNESS: Yes.
"THE COURT: Was that identification made in whole or in part when you saw Mr. Fortier at the police building?
"THE WITNESS: In whole. There was no doubt in my mind that when I seen him in the police building who he was and no doubt when I walked into the courtroom prior to him coming in with his counsel. I knew who he was as soon as I walked in Department 109."

dence that the officer's identification was independent of the lineup, can be distinguished on its facts from the case before us. In *People* v. *Caruso* the court reasoned that it would be difficult for the prosecution to produce clear and convincing evidence that the identification was untainted by the illegal lineup where the witnesses testified that they saw defendant for only five or six seconds. In the instant case, an officer who is trained to notice a suspect's physical characteristics, was in the same well-lit room with defendant for several minutes. The situations are clearly distinguishable.

In *People* v. *Elder* (1969) 274 Cal.App.2d 381, 389, 391-392 [79 Cal. Rptr. 466], the court held that the trial court was warranted in finding that the in-court identification was based on a recollection from the night of the incident, where the witness saw defendant's face about one or two feet away with the aid of exterior light and again when the bedroom light was turned on as defendant backed out. A similar finding was upheld in *People* v. *Davis* (1970) 2 Cal.App.3d 230, 238 [82 Cal.Rptr. 561], where the witness was 7 or 8 feet away from the defendant for five or six minutes during a robbery. In *In re Hill* (1970) 71 Cal.2d 997, 1006-1007 [80 Cal.Rptr. 537, 458 P.2d 449], the court held that the in-court identification was not tainted by the illegal lineup where the witness saw the defendants for 30 seconds before the witness was struck on the head and shot in the leg, but where the witness remained conscious and watched the defendants throughout the commission of the crime.

## II

Defendant contends that the sentences he received violated Penal Code section 654, which proscribes multiple punishment for the same act or omission. He contends that he should be sentenced either for the sales (counts III and IV) or for the possessions for sale (counts I and II) but not for both. We do not agree. Whether a transaction is a divisible act, and punishable separately, or an indivisible course of criminal conduct, such that only one punishment is proper, is to be resolved on the facts of each case. (*People* v. *Wallace* (1962) 199 Cal.App.2d 678 [18 Cal.Rptr. 917].) In *People* v. *Tenney* (1958) 162 Cal.App.2d 458, 463 [328 P.2d 254], the court held that possession by defendant prior to sale was incidental to the sale, and possession existing subsequent to the sale was not incidental to the prior sale, and that transportation of the narcotics would support a separate possession charge.

*People* v. *Allen* (1967) 254 Cal.App.2d 597, 604 [62 Cal.Rptr. 235], is

directly in point. In the *Allen* case it was held that imposition of concurrent sentences for selling dangerous drugs and for possession for sale of a dangerous drug does not violate Penal Code section 654, where there was nothing to show that the intended sale of 8,000 benzedrine pills was incidental to defendant's possession of 92,000 additional benzedrine pills.

*People* v. *Sheldon* (1967) 254 Cal.App.2d 174, 183 [61 Cal.Rptr. 778], on which defendant relies, is distinguishable from the case at bench. In that case it was held that Sheldon could not be sentenced for both possession for sale and for furnishing marijuana where the contents of both bag and box were used to fill the order, showing an intent to offer all he had for sale. In the case at bench, there is no indication that the undercover agent was to buy all the narcotics defendant possessed, and the officer bought only a small portion.[3]

### III

■ There is no showing in the record that the police or prosecution made any effort to assist the defense in locating or producing Angel. The recent case of *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42], decided after the briefs in this case were written, held that, although the prosecutor need not produce an informer, still, where the informer is a material witness,[4] the police should make inquiries and reasonably necessary arrangements to enable the prosecutor and defense to locate the informer. The police should make a good faith effort to obtain the informer's address, so that he can successfully be subpoenaed for attendance at the trial.

As the Supreme Court expressly recognized, *Eleazer* overruled a series of decisions in the Courts of Appeal and established a new rule imposing additional duties on the police and the prosecution. That case arose on a writ of prohibition and the Supreme Court, after announcing the new rule, denied a peremptory writ, saying that ". . . the People should be afforded an opportunity to comply with this ruling by attempting to locate . . . the witness." Since the case at bench is an appeal after final judgment, that method of alleviating the retroactive effect of the new rule is not available to us.

---

[3]It should be noted that a separate sentence on count II, possession for sale of restricted dangerous drugs, is proper. Similarly, possession of narcotics under different classifications of the Health and Safety Code may be punished as separate crimes. (*People* v. *Schroeder* (1968) 264 Cal.App.2d 217, 227-228 [70 Cal.Rptr. 491].) Defendant does not contend otherwise.

[4]Since "Angel" was an eyewitness to the sale, she clearly was a "material witness" within the rules herein involved. (See *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 851 [83 Cal.Rptr. 586, 464 P.2d 42].)

The Attorney General argues that the *Eleazer* rule is inapplicable because Angel was not an "informer" within the definition set forth in that case (1 Cal.3d at p. 853, fn. 10). The record here contains the testimony of Officer Postelle that he met her on this one occasion only, and he did not pay her anything. This testimony is of little value in showing whether or not she was regularly supplying information to the police department for compensation. Since the issue was not explored at the trial we have no basis for determining it here.

We are, therefore, squarely faced with the question: Is *Eleazer* to be applied retroactively to cases still on appeal where arrest, prosecution and trial antedated its announcement? We need not repeat here the discussion of the reasons for and against retroactivity recently expounded by the Supreme Court in *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1107-1110 [80 Cal.Rptr. 633, 458 P.2d 713]. Applying the tests therein discussed, we conclude that the *Eleazer* rule should not be applied retroactively to cases where the police contacts with their informant long preceded the announcement of their new responsibilities.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.