[Crim. No. 12925. Second Dist., Div. Four. Mar. 27, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY SEABERRY, Defendant and Appellant.

Harry C. Harper, under appointment by the Court of Appeal, and Franklin H. Wilson for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Michael J. Smolen, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—This consolidated appeal is from the judgments entered against defendant in two cases.

Defendant was charged in case No. 314434 with two violations of Health and Safety Code, section 11911, for possessing for purpose of sale two restricted dangerous drugs, seconal and benzedrine. The cause was submitted to the court upon the transcript of the preliminary examination proceedings with additional testimony being introduced. The court found defendant guilty as charged. In case No. 318226, defendant was charged with the sale of seconal in violation of Health and Safety Code, section 11912. He was found guilty in a jury trial. Probation was denied in each case and defendant was sentenced to state prison, the sentence in case No. 318226 being ordered to run consecutively with the sentences in case No. 314434.

Defendant contends that the evidence is unsufficient to support the judgment convicting him (in case No. 314434) of the two counts of possession for sale. A summary of the evidence, viewed as it must be in the light most favorable to the People, follows:

On October 12, 1965, at about 10 p.m., Officer Weisser was on patrol with his partner in a marked police vehicle. They

were driving south through an alley just west of Avalon Boulevard. As they approached 60th Street, they observed defendant standing on the south curb next to a green Chevrolet. When the police car came into view defendant made a gesture with his right hand away from his body. He then entered the vehicle on the front passenger's side and was sitting in it when the officers drove up. Weisser walked over and observed a rolled up piece of paper lying in the street a few inches under the Chevrolet. He picked up the the paper and saw that inside were two packages, one containing red capsules and the other white capsules. The red capsules appeared to be "red devils" and the white ones appeared to be "bennies." Defendant was arrested for possession of dangerous drugs and the car was then searched. In the trunk the officers discovered a large quantity of the same type pills packaged in varying quantities. (It was stipulated that the pills found in the package and in the trunk were seconal and benzedrine; that the quantity and manner of packaging would support a finding they were held for sale.)

After being fully advised of his constitutional rights, in response to questioning defendant told Officer Weisser that he had been driving the Chevrolet; that the car was not his but that he intended to buy it; he had no knowledge of the drugs found in the trunk; possibly his girl friend put them there to frame him; he did not know why she would want to frame him; she lived only a few doors away but he would not tell where she lived.

In his testimony, after denying any knowledge of the drugs and denying he made the throwing motion described by the officer, defendant further denied that he had told the officer his girl friend might be trying to frame him.

 The above evidence in case No. 314434 provides substantial support for the determination of the trier of fact. It may reasonably be inferred from the evidence that defendant had the required dominion and control over the drugs found, and further, that he had the required guilty knowledge. The evidence included defendant's furtive conduct in making the throwing motion at the approach of the officers; the fact he was the only person around or inside the car at the time; his admission that he was in control of the vehicle; and the less than believable story he told about being "framed," which later was denied in his testimony. It was stipulated that the quantity of the drugs found and the manner in which they were packaged indicated the possession was for purposes

of sale. ■ Since seconal and benzedrine are different and distinct types of drugs, the possession of each constituted a separate and distinct offense. (See *People* v. *Lockwood,* 253 Cal.App.2d 75, 82-83 [61 Cal.Rptr. 131]; *People* v. *Lopez,* 169 Cal.App.2d 344, 351 [337 P.2d 570].)

■ It is contended that the prosecutor committed prejudicial misconduct in case No. 318226, by eliciting testimony from a police officer that he saw a ''mug photo'' of defendant before he made the ''buy'' from him. Defendant argues that the introduction of the evidence concerning the photograph and the prosecutor's reference to it as a mug photo prejudiced his case by indicating to the jury that he had had trouble with the law in the past.

Officer Clayborn testified that, on November 3, 1965, he was working in an undercover capacity for the narcotics division on a ''buy program.'' At 8:30 p.m. he parked his car at 60th and Avalon, a high frequency drug and narcotics traffic area. Defendant approached his car and asked what he wanted. He told defendant he wanted ''ten reds.'' Whereupon defendant counted out ten tinfoil packages, which he took from his pocket, and handed them over. The officer, in turn, handed defendant a ten dollar bill and then drove off with the packages (which later examination revealed to contain seconal).

The transaction took but a few seconds and it occurred at night. It was apparent that the officer's identification of defendant would be subject to challenge by the defense. To strengthen that identification, testimony was elicited by the prosecution on direct examination that the officer had seen ''a picture'' of defendant earlier that day while he was at the Police Administration Building.

As expected, on cross-examination the defense attempted to shake the officer's identification. It was brought out that during the period from August through December, he had made ''buys'' from about 40 different individuals. Upon being questioned concerning the ''picture'' of defendant to which he had referred in his testimony on direct examination, the officer stated that he did not have it with him when he made the buy from defendant; it was put in the ''mug book'' at the police station; it was one of a group of three pictures he viewed that day, each of a different individual; the picture marked as a defense exhibit in the case was not the same picture as the one he had seen.

On redirect examination the prosecution elicited that, on the evening in question, the officer was not specifically looking for defendant; he went to this area to possibly make a pur-

chase; when he drove up and his headlights flashed on defendant, he immediately recognized him; while the photograph in court was not the same photograph he had looked at, it was a similar photograph; the photograph he had seen came from defendant's "package" at Records and Identification.

In his questioning of the officer on redirect examination, the prosecutor several times referred to the photograph as a "mug shot." Defendant raised no objection.

Defendant did not testify. The defense consisted in the testimony of an alibi witness who stated that defendant was with her at her place of business on the evening of November 3, 1965.

"Except when it shows merely criminal disposition, evidence which tends to establish a fact material for the prosecution is admissible although it may connect the accused with an offense not included in the charge. [Citations.]" (*People* v. *Cook,* 252 Cal.App.2d 25, 28 [60 Cal.Rptr. 133].) The identification of the accused is obviously a "fact material for the prosecution" to establish. (See *People* v. *Cook, supra,* at p. 29.)

The question of identification was the single overriding issue presented in the instant case. The evidence that the officer saw a picture of defendant shortly before he made the "buy" from him, clearly helped to bolster an otherwise tenuous identification, and was thus highly relevant. As indicated above, the sale was consummated at night, in a matter of minutes and with an officer who had made many different buys during the same period of time.

The prosecutor, in his redirect examination, might have referred to the photograph without describing it as a "mug photo." The use of the term was apparently occasioned as the result of testimony elicited by the defense on cross-examination. In any event, we conclude defendant was not prejudiced. Reinforcing this conclusion, is the fact that the defense voiced no objection at the trial to the prosecutor so describing the picture, thus indicating it was not regarded by the defense as being injurious to its case.

The judgments of conviction are affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied April 16, 1968, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1968. Peters, J., was of the opinion that the petition should be granted.