[Crim. No. 4234. Fourth Dist., Div. One. Mar. 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
MELINDA LEE INNES, Defendant and Appellant.

COUNSEL

James L. Kellam for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**COUGHLIN, J.**—Defendant, Melinda Innes, was charged in one count of an information with the offense of selling and offering to sell "a restricted dangerous drug, to-wit: LSD," and in a second count with the offense of selling and offering to sell "a restricted dangerous drug, to-wit: Mescaline," each a violation of Health and Safety Code section 11912; was tried by the court without a jury; was found "guilty on both counts"; was granted probation; and appeals.

We affirm the conviction of the offense of offering to sell Mescaline; find unmeritorious defendant's contentions on appeal as respects that conviction; and reverse the conviction of the offense of selling Mescaline and the offense of offering to sell and selling LSD, upon the ground the evidence is insufficient to sustain these convictions.

■ The offense of offering to sell and selling LSD and the offense of offering to sell and selling Mescaline, although both involve restricted dangerous drugs and both are violations of Health and Safety Code section 11912, are separate offenses. (*People* v. *Seaberry,* 260 Cal.App.2d 507, 510 [67 Cal.Rptr. 182]; see also *People* v. *Lockwood,* 253 Cal.App. 2d 75, 82 [61 Cal.Rptr. 131].)

On August 4, 1969, Police Officer Roy Florida, acting as an undercover agent, went to an apartment complex to effect the purchase of restricted dangerous drugs from a man known to him as "Jim," whom he previously had contacted; ascertained from an occupant Jim had moved to Colorado; and when walking out of the apartment area saw defendant in the front yard. Florida told defendant he had been working with Jim on a deal for some "reds" and asked defendant if she knew where he could get any "reds," in response to which defendant said "she didn't have any"; asked defendant if she had any "whites" to which she made the same response; and then asked defendant if she had any "acid," in response to which she said she did not and pointed to another girl in the area, saying "If you want to buy some reds go to her, she's a big dealer." Defendant, addressing Florida, then said either "do you want some mescaline" or "do you want to buy some mescaline." In response Florida said "yeah" and asked her "how much she could do." He testified by this reply he meant "how much she could sell." Defendant said "she would have to check"; went into a nearby apartment; returned in about five minutes; removed a plastic bag from under her shirt and, as related by Florida in his testimony, "She told me that she had 13 caps and I believe also she said that they normally sold for $4.00 apiece and she was going to give me a break on the price." Also respecting this incident Florida testified when defendant returned "she said something to the effect, 'I can sell you thirteen caps' "; he paid defendant $50; and in return she handed him the plastic bag containing 13 red capsules. Later on the same day another officer arrested defendant for selling Mescaline. Thereafter it was ascertained the capsules did not contain Mescaline but contained LSD.

Defendant testified, among other things, Florida asked her if she knew where he could get "anything," in response to which she said she "could try to find somebody for him," went to an apartment and, as related in her words, "I said, 'There is someone that wants something, do you have any-

thing to sell' and they said they had some mescaline and they said 'Who is it,' and I said that it was a friend of Jim's . . . they told me to tell him what was available and find out if he wanted any and what he wanted to spend"; thereupon she reported to defendant "they" had some Mescaline and he said he wanted some and that he had $50; she went back into the apartment and "they said that they had thirteen caps and that they wanted fifty dollars for it"; "they" gave her a plastic bag which she placed under her T-shirt; she again contacted Florida; and then, as related in her testimony, "I gave him the mescaline" and "He gave me the money and I took it to the people."

Obviously no sale of Mescaline occurred.

The elements of the offense of selling or offering to sell a restricted dangerous drug are the same as those of the offense of selling or offering to sell narcotics. (*People* v. *Allen*, 254 Cal.App.2d 597, 600, 602 [62 Cal. Rptr. 235].)

■ The elements of the offense of offering to sell restricted dangerous drugs are an offer to sell the drug with the specific intent to make a sale. (*People* v. *Jackson*, 59 Cal.2d 468, 469 [30 Cal.Rptr. 329, 381 P.2d 1]; *People* v. *Brown*, 55 Cal.2d 64, 68 [9 Cal.Rptr. 816, 357 P.2d 1072]; *People* v. *Allen, supra*, 254 Cal.App.2d 597, 602.) In the case at bench the evidence does not support a finding defendant, prior to the time she exhibited to Florida the plastic bag containing "thirteen caps," had made an offer to sell him Mescaline. At most, she ascertained he wanted to buy Mescaline and advised him she would check to determine how much, if any, Mescaline was available for sale. There is no evidence of an offer to sell or an intent to make a sale at this time.

■ When defendant produced the plastic bag and told Florida she could sell him "thirteen caps" which normally sold for $4 apiece but she was going to give him a break on the price, she made an offer to sell. In light of the prior conversation between defendant and Florida respecting Mescaline it is reasonable to infer the object of the offer to sell was "thirteen caps" of Mescaline. On this basis the conviction of the offense of offering to sell Mescaline was supported by the evidence.

■ The elements of the offense of selling a restricted dangerous drug are the sale thereof with knowledge of the dangerous drug character of the substance sold. (*People* v. *Lopez*, 254 Cal.App.2d 185, 188 [62 Cal.Rptr. 47]; *People* v. *Ballard*, 145 Cal.App.2d 94, 99 [302 P.2d 89]; gen. see *People* v. *Winston*, 46 Cal.2d 151, 158 [293 P.2d 40].)

■ In the case at bench the defendant was charged not merely with selling and offering to sell a restricted dangerous drug but with selling

and offering to sell a *named* restricted dangerous drug. If the evidence had established plaintiff believed the "thirteen caps" contained a substance the sale of which was not proscribed, the element of knowledge of the dangerous drug character of the substance sold would be lacking and she would not have committed the offense charged. By analogy, as the evidence establishes defendant believed the "thirteen caps" contained Mescaline, and for this reason had no knowledge they contained LSD, she did not commit the offense of offering to sell and selling LSD. Under the circumstances peculiar to this case, it is unreasonable to infer defendant had knowledge the substance in the "thirteen caps" was LSD from the fact of her possession thereof (gen. see *People* v. *White,* 71 Cal.2d 80, 83 [75 Cal.Rptr. 208, 450 P.2d 600]), in light of the evidence which establishes Florida believed he was purchasing Mescaline, the testimony of defendant she believed the substance in the "thirteen caps" was Mescaline and the fact she was arrested for the sale of Mescaline. When defendant offered to sell Florida the "thirteen caps" she offered to sell him either "thirteen caps" of Mescaline or "thirteen caps" of whatever substance the capsules contained, which was proven to be LSD, but not both Mescaline and LSD. Contradicting inferences may not be drawn from the same evidence to support both a conviction of the offense of offering to sell Mescaline and the offense of offering to sell and selling LSD.

In any event, the evidence establishes the commission of only one offense of offering to sell or of offering to sell and selling a restricted dangerous drug.

Defendant's contention she was denied due process of law because she was entrapped is without merit.

In light of the foregoing conclusions, it is unnecessary to consider other contentions raised by defendant as they concern the LSD charge which we hold has not been proven.

Defendant's conviction of the offense of selling Mescaline and the offense of offering to sell and selling LSD are set aside. The judgment is modified accordingly, and as modified is affirmed.

Whelan, J., and Ault, J., concurred.