[Crim. No. 4196. Fourth Dist., Div. Two. Nov. 16, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT FRANK SCHREIBER, Defendant and Appellant.

## COUNSEL

Stephen D. Brandon, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Barbara T. King, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**GARDNER, P. J.**—Defendant was convicted of one count of transportation and sale of a restricted dangerous drug, LSD, and one count of transportation and sale of a restricted dangerous drug, amphetamine (Benzedrine). He was convicted by a jury and appeals.

On November 10, 1969, Officer Smock of the Buena Park Police Department, acting in an undercover capacity in a narcotic investigation, was introduced to the defendant in a park in Garden Grove by one Michael Moore. The encounter was not prearranged. Defendant said to Smock, "Are you the guy that wants to score [purchase] the hits [narcotics or dangerous drugs]?" Smock answered, "Yeah, if the stuff is any good I would be interested in scoring." To this the defendant responded, "If mescaline is really good." (While this statement is ambiguous at best, Smock did testify the conversation was centered around mescaline: he believed that is what he was being offered.) There was some conversation about getting "burned" [buying a substance represented to be a narcotic when in fact it is not] to which defendant said that he was at the

park all the time and if there was a "burn," Smock could come back and get his money back. After some conversation about prices, the officer agreed to buy 10 for $2 each. Defendant walked over to a group of people and returned. He and Smock left Moore and walked to a car parked at the curb. The defendant had a clear plastic baggie that contained numerous capsules and tablets. He counted out 10 clear capsules, containing a white powdery substance. Smock thought he was buying mescaline. He knew that mescaline came in various forms although he had never seen it in that particular form before. There were also some tablets in the baggie. The defendant told Smock that they were "whites" that he had gotten for his sister "but he didn't want them any more and I [Smock] could have them." He did not say that Smock had to pay for these tablets. The defendant delivered the ten capsules and the tablets and Smock handed him the two ten dollar bills. A Garden Grove police officer who did not know Smock arrested both Smock and the defendant because he believed they were in possession of marijuana. Smock was later released at the police station upon being identified as a police officer. It was stipulated that the capsules contained a usable amount of LSD, the tablets a usable amount of Benzedrine.

The defendant denied the sale and said the man with whom he was arrested was not Smock. Two others who were in the park that night also testified that the man with whom defendant was arrested was not Smock.

■ The defendant contends that the conviction of the count of the sale of LSD is error because there was no proof that the defendant had a specific intent to sell that drug.

One element of the offense charged is knowledge of the character as a dangerous drug of the substance sold. This knowledge can be established by circumstantial evidence and the circumstantial evidence in this case is clearly sufficient for that purpose. However, the defendant contends that the evidence must show knowledge of the specific drug and since he represented that he sold mescaline (a narcotic) when in fact he sold LSD (a restricted dangerous drug), the People have failed to show the required knowledge of the character of the specific drug sold.

Knowledge of the character of the drug sold can be inferred from defendant's possession and sale of the drug: mere possession of a drug constitutes substantial evidence that the possessor knew of its nature. (*People* v. *White,* 71 Cal.2d 80, 83 [75 Cal.Rptr. 208, 453 P.2d 600]; *People* v. *Bretado,* 178 Cal.App.2d 465, 469 [3 Cal.Rptr. 216]; *People* v. *Woods,* 108 Cal.App.2d 50, 52 [238 Cal.Rptr. 124].)

*People* v. *Innes,* 16 Cal.App.3d 175 [93 Cal.Rptr. 829], which the Attorney General has brought to our attention, does not hold to the contrary. It simply states that on its peculiar facts, the inference of knowledge was unreasonable.

In *Innes,* the undercover officer first asked defendant if she knew where he could get some "reds"; when she said she did not, he asked about "whites" and "acid," receiving the same response. Defendant then offered to sell the officer mescaline and gave him 13 capsules in exchange for $50. These capsules did not contain mescaline, but LSD. Defendant was convicted of offering to sell mescaline;[1] that conviction was affirmed. She was also convicted of selling LSD; that conviction was reversed on appeal because the facts made the ordinary inference of knowledge unreasonable. The court based its holding on all the facts and circumstances, the most important of which was the fact defendant had just denied having any LSD for sale when she offered mescaline as a substitute. It is unreasonable to believe a seller would then turn around and knowingly sell a drug she denied having and for which the buyer had expressed a preference.

The peculiar facts of *Innes* are not present here. The similarity that in both cases mescaline was offered and LSD was the substance actually sold does not compel reversal; the misrepresentation alone does not make it unreasonable to infer the defendant knew he was selling LSD. In fact, the adverse publicity relating to LSD and its relative availability compared to mescaline, a drug reputed to be less dangerous, indicate it would be in defendant's interest to falsely represent what he knew to be LSD as mescaline. The facts central to the reversal of the conviction in *People* v. *Innes*—the officer's request for LSD and defendant's response she didn't have any—make it clear *Innes* does not support defendant's contention.

We hold that there was no error in the conviction of the defendant of count one of the information in which he represented the substance sold to be mescaline when in truth and fact it was LSD.

Defendant's other contentions are without merit and may be disposed of summarily. They are:

1. That the prosecution was guilty of misconduct in suggesting to defense witnesses in the course of their examination that Smock was the person arrested with the defendant although the witnesses denied this. The questions posed by the district attorney constituted proper cross-examination and in no way constituted misconduct.

---

[1]On an information which mistakenly classified mescaline a restricted dangerous drug; it is in fact a narcotic. (Health & Saf. Code, § 11001, subd. (b).)

2. That there was a violation of the rule of *Eleazer* v. *Superior Court,* 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42]. The answer to this contention is obvious; there was no request for the police to produce the informant, Mr. Moore.

3. Defendant was not deprived of the effective aid of counsel. He received a spirited and effective defense. There is no showing as a demonstrative reality of inadequate representation. Trial strategy and tactics will not be reviewed with the hindsight of an appellate court. The defendant's defense was in no way a farce or sham. (*People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].)

Gabbert, J., and Kaufman, J., concurred.