Opinion
 

 RICHLI, J.
 

 Defendant Ponciano Ochoa Romero (defendant) took delivery of over two tons of cocaine, plus over seventy pounds of marijuana. The police seized one ton of the cocaine while it was still at his business, and
 
 *149
 
 another ton after it had been shipped on to the next link in the distribution chain. Defendant was convicted of conspiracy, transportation of a controlled substance, possession for sale of a controlled substance, and possession for sale of marijuana, and sentenced to 33 years in prison.
 

 Defendant contends the trial court erred by:
 

 1. Instructing that a mistaken belief that the cocaine was marijuana was not a defense.
 

 2. Failing to instruct on mistake of fact.
 

 3. Failing to instruct on duress and/or necessity.
 

 We find no error, and we will affirm.
 

 I
 

 Factual Background
 

 Expert testimony established that Colombian drug cartels import cocaine through Mexico, often by tractor-trailer. Once the cocaine is in this country, it is taken to a “warehouse”—someplace where it can be stored in large quantities. The person in charge of the warehouse would have to be someone the cartel could trust. Next, relatively smaller quantities are taken from the warehouse to “stash houses.” Finally, the cocaine is distributed from the stash houses to dealers, in quantities of two to four kilograms at a time.
 

 Defendant owned Ernie’s Auto Repair in Bloomington. On January 17, 1995, while defendant was present, a tractor-trailer delivered cocaine to Ernie’s. Later that day, again while defendant was present, a pickup truck took some of the cocaine from Ernie’s to a typical stash house in Fontana.
 

 On January 18, 1995, the police executed a search warrant at Ernie’s. They found 1,990 pounds of cocaine, in plastic burlap-like bags, each containing 20 one-kilo packages. More than half the cocaine was found in defendant’s red Dodge van. The police also found two plastic trash bags containing seventy-one pounds of marijuana, in unwrapped bricks, and another two trash bags containing wrappings which had evidently been removed from the marijuana. They also found a digital scale.
 

 That same day, the police executed a search warrant at the stash house. There they found 2,133 pounds of cocaine, in similar bags, each similarly containing 20 one-kilo packages.
 

 
 *150
 
 When defendant was arrested, he admitted “Juan” had asked him to hold the cocaine for one hour, in exchange for $3,000. He had agreed because “he needed the money.” He admitted telling the people who delivered the cocaine where to put it, including inside his red van.
 

 Defendant testified on his own behalf. He claimed he only agreed to hold “mota” (marijuana), not “coca” (cocaine). After the shipment arrived, he saw some of the marijuana. He never saw any of the cocaine, because the bags were closed and he did not open them. He claimed he did not know they contained cocaine until the police told him. He also claimed he told the police “it was mota they were going to bring and not coca.”
 

 II
 

 Procedural Background
 

 On February 14, 1995, an information was filed which, as subsequently amended, charged defendant with: (1) conspiracy to commit (a) possession for sale of a controlled substance, and (b) transportation of a controlled substance (Pen. Code, § 182, subd. (a)(1)); (2) sale or transportation of a controlled substance, allegedly cocaine (Health & Saf. Code, § 11352, subd. (a)); (3) possession for sale of a controlled substance, allegedly cocaine (Health & Saf. Code, § 11351); and (4) possession for sale of marijuana (Health & Saf. Code, § 11359). In connection with counts 1 through 3, it was alleged for enhancement purposes that the substance containing cocaine weighed more than 80 kilograms (Health & Saf. Code, § 11370.4, subd. (a)(6)). In connection with counts 2 and 3, it was alleged for enhancement purposes that defendant had been previously convicted of possession for sale of a controlled substance (Health & Saf. Code, § 11370.2, subd. (a)).
 

 On July 12, 1995, following a jury trial, defendant was found guilty on all four counts; all enhancement allegations were found true.
 

 On October 20, 1995, the trial court sentenced defendant on count 2 (sale or transportation of a controlled substance) to five years (the upper term), plus twenty-five years on the weight enhancement, to be served consecutively, plus three years on the prior conviction enhancement, to be served consecutively; on count 1 (conspiracy), to five years (the upper term), to be served concurrently; on count 3 (possession for sale of a controlled substance), to four years (the upper term), to be served concurrently; and on count 4 (possession for sale of marijuana), to three years (the upper term), to be served concurrently. Sentence on the enhancements to counts 1 and 3 was stayed, purportedly pursuant to Penal Code section 1170.1. Accordingly, defendant’s total sentence was 33 years.
 

 
 *151
 
 III
 

 The Significance of Defendant’s Claimed Mistaken Belief That He Received Only Marijuana
 

 Defendant contends the following jury instruction was erroneous: “Cocaine and marijuana are both controlled substances. It is no defense to the charges of transportation, and possession of cocaine for sale that the defendant believed he possessed marijuana. [*]Q If the proof shows the defendant knew he possessed for sale, or transported, a controlled substance but believed it was marijuana, when the substance was actually cocaine, he is not relieved of criminal responsibility by reason of this mistake on his part in identifying the chemical nature of the controlled substances possessed for sale, or transported, by him.” Defendant also contends the trial court erroneously failed to instruct on the defense of mistake of fact.
 

 Defendant relies on the principle that drug possession, sale and transportation offenses ordinarily require knowledge of the “nature” or “character” of the drug. To assess this contention, we must first review some of the history of this requirement.
 

 In
 
 People
 
 v.
 
 Gory
 
 (1946) 28 Cal.2d 450 [170 P.2d 433], the defendant was charged with possession of a narcotic, namely marijuana (former Health & Saf. Code, § 11160; see now Health & Saf. Code, § 11357).
 
 (People
 
 v.
 
 Gory, supra,
 
 28 Cal.2d at p. 451.) The trial court refused his request for instructions requiring the jury to find that he possessed the marijuana knowingly, and that he had guilty knowledge of its character.
 
 (Id.,
 
 at p. 453.)
 

 The Supreme Court held that the crime is committed by possession alone; knowledge of the
 
 nature
 
 of the item possessed is
 
 not
 
 required. (28 Cal.2d at pp. 453-454.) It held further, however, that knowledge of the
 
 presence
 
 of the item
 
 is
 
 required. It reasoned that “possession” means dominion and control, and one cannot exercise dominion and control over an object unless one is aware of its presence.
 
 (Id.,
 
 at pp. 454-455.) “The distinction which must be drawn ... is the distinction between (1)
 
 knowledge of the character of the object and the unlawfulness of possession thereof
 
 as embraced within the concept of a specific intent to violate the law, and (2)
 
 knowledge of the presence of the object
 
 as embraced within the concept of ‘physical control with the intent to exercise such control,’ which constitutes the ‘possession’ denounced by the statute. It is ‘knowledge’ in the first sense which is . . . immaterial but ‘knowledge’ in the second sense is the essence of the offense.”
 
 (Id.,
 
 at pp. 455-456.)
 

 In
 
 People
 
 v.
 
 Winston
 
 (1956) 46 Cal.2d 151 [293 P.2d 40], the defendant was similarly charged with possession of a narcotic, namely marijuana.
 
 *152
 
 (Former Health & Saf. Code, § 11500; see now Health & Saf. Code, § 11357). The trial court refused his request for an instruction requiring the jury to find that he had knowledge of the narcotic nature of the item he possessed. (46 Cal.2d at p. 158.)
 

 The Supreme Court held this was error: “While specific intent to violate the law is immaterial to a conviction for the unlawful possession of a narcotic, knowledge of the object’s narcotic character—that is, ‘knowledge that the facts exist which bring the act . . . within the provisions of [the] code’—is required. [Citations.]”
 
 (People
 
 v.
 
 Winston, supra,
 
 46 Cal.2d at p. 158, quoting
 
 People
 
 v.
 
 Gory, supra,
 
 28 Cal.2d at p. 456.) Curiously, the court’s entire explanation was that this was “implicit” in the portion of
 
 Gory
 
 which required knowledge of the presence of the item; it rejected the portion of
 
 Gory
 
 which had seemingly held that knowledge of the nature of the item was not required, as mere dictum. (46 Cal.2d at pp. 159-161.)
 

 Defendant argues that
 
 Winston
 
 required knowledge of the drug’s “physical character” (i.e., which drug it is, regardless of whether the defendant knows it is illegal) rather than its “legal character” (i.e., that it is illegal, regardless of whether the defendant knows which drug it is). We find no such requirement in
 
 Winston. Winston
 
 defined “knowledge of the object’s narcotic character” as “ ‘knowledge that the facts exist which bring the act . . . within the provisions of [the] code.’ ”
 
 (People
 
 v.
 
 Winston, supra,
 
 46 Cal.2d at p. 158, quoting
 
 People
 
 v.
 
 Gory, supra, 28
 
 Cal.2d at p. 456.) A defendant who mistakenly believes a package of cocaine actually contains marijuana nevertheless knows that facts exist which bring possession of the package within the provisions of the Health and Safety Code. This is true even if the defendant does not know that either marijuana or cocaine is an illegal drug.
 

 Defendant also relies on the fact that
 
 Winston
 
 required knowledge of the “narcotic” nature of the substance. In defendant’s view, this refers to its physical character, whereas its “controlled substance” nature, again in defendant’s view, refers to its legal character. We disagree. In
 
 Winston,
 
 the relevant statutes prohibited the possession, sale and transportation of any “narcotic.”
 
 Winston
 
 therefore required knowledge of the drug’s “narcotic character.” In 1965, however, statutes were enacted which prohibited the possession, sale and transportation of any “restricted dangerous drug.” (Former Health & Saf. Code, §§ 11910, 11911, 11912, Stats. 1965, ch. 2030, § 1, pp. 4603-4604.) Cases decided under these statutes required knowledge of the drug’s “restricted and dangerous drug” character. (E.g.,
 
 People
 
 v.
 
 Williams
 
 (1971) 5
 
 *153
 
 Cal.3d 211, 215 [95 Cal.Rptr. 530, 485 P.2d 1146];
 
 People
 
 v.
 
 Carnesi
 
 (1971) 16 Cal.App.3d 863, 872 [94 Cal.Rptr. 555];
 
 Russell
 
 v.
 
 Superior Court
 
 (1970) 12 Cal.App.3d 1114, 1117 [91 Cal.Rptr. 255].)
 

 Then, in 1972, the present statutes were enacted which lumped narcotics and restricted dangerous drugs together as “controlled substances.” (Health & Saf. Code, §§ 11350, 11351, 11352 [prohibiting possession, sale and transportation of former narcotics], 11377, 11378, 11379 [prohibiting possession, sale and transportation of former restricted dangerous drugs].) Accordingly, what is now sometimes said to be required is knowledge of the “controlled substance” character of the item. (E.g.,
 
 People
 
 v.
 
 Rushing
 
 (1989) 209 Cal.App.3d 618, 621 [257 Cal.Rptr. 286]; CALJIC Nos. 12.00, 12.01, 12.02 (6th ed. 1996).) All these terms, however, merely incorporate that list of drugs which the Legislature has declared to be “narcotics,” “restricted dangerous drugs,” or “controlled substances” at any given time. We see no grounds for construing knowledge of a drug’s “narcotic character” to mean knowledge of its chemical composition or its peculiar intoxicating powers.
 

 Finally, we cannot say the underlying rationale of
 
 Winston
 
 compels us to extend its holding so as to require knowledge of the physical character of the drug. Indeed, that underlying rationale is not easy to discern. Not long ago, in
 
 People
 
 v.
 
 Telfer
 
 (1991) 233 Cal.App.3d 1194 [284 Cal.Rptr. 913], this court held that the offense of manufacturing a controlled substance (Health & Saf. Code, § 11379.6) does not require knowledge of the character of the item manufactured. After carefully reviewing
 
 Gory
 
 and
 
 Winston,
 
 we confessed: “We have searched those cases for a rationale which would apply to other fact situations, but have come up empty-handed. [Citation.]”
 
 (People
 
 v.
 
 Telfer, supra,
 
 233 Cal.App.3d at pp. 1201-1202.) We concluded, however, that the rationale of
 
 Gory,
 
 upon which
 
 Winston
 
 purported to rely, did not support an expansive application of the knowledge requirement.
 
 (Id.,
 
 at pp. 1201-1202, 1204.)
 

 Two cases decided since
 
 Winston
 
 have squarely rejected defendant’s contentions. First, in
 
 People
 
 v.
 
 Garringer
 
 (1975) 48 Cal.App.3d 827 [121 Cal.Rptr. 922], the defendant was found to be in possession of 1,600 red capsules, which appeared in every way to contain secobarbital. He told police a dealer had paid him $150 to deliver “reds” to a customer. He was charged with possession for sale of a controlled substance, namely secobarbital (Health & Saf. Code, § 11378). Chemical analysis, however, revealed that the capsules actually contained phenobarbital. The information was amended to charge possession for sale of a controlled substance, namely phenobarbital (Health & Saf. Code, § 11378). The defendant was convicted of the lesser included offense of simple possession of phenobarbital (Health
 
 *154
 
 & Saf. Code, § 11377).
 
 (People
 
 v.
 
 Garringer, supra,
 
 48 Cal.App.3d at pp. 830-831.)
 

 The jury was instructed: “ ‘Secobarbital and phenobarbital are both controlled substances. It is no defense to the charge of possession of phenobarbital that the defendant believed he possessed secobarbital. If the proof shows that the defendant knew that he possessed a controlled substance but believed it was secobarbital when the substance was actually phenobarbital, he is not relieved of criminal responsibility by reason of this mistake on his part in identifying the chemical nature of the controlled substance possessed by him.’ ”
 
 (People
 
 v.
 
 Garringer, supra,
 
 48 Cal.App.3d at p. 835.)
 

 The appellate court upheld this instruction: “A person who intends to possess a controlled substance, believes he possesses a controlled substance, and in fact possesses a controlled substance is guilty of violating section 11377 of the Health and Safety Code. The only knowledge that is required to sustain the conviction is knowledge of the controlled nature of the substance. [Citation.] The defendant need not know the chemical name or the precise chemical nature of the substance. Any more stringent rule as to knowledge would, for all practical purposes, make the statute inapplicable to anyone who had not personally performed a chemical analysis of the contraband in his possession. Needless to say, such was not the Legislature’s intent.”
 
 (People
 
 v.
 
 Garringer, supra,
 
 48 Cal.App.3d at p. 835.)
 

 The same court later decided
 
 People
 
 v.
 
 Guy
 
 (1980) 107 Cal.App.3d 593 [165 Cal.Rptr. 463], There, after the defendant was stopped for speeding, he was found to be in possession of phencyclidine (PCP). He claimed that he found the PCP in a trash can. He had used cocaine before and, thinking what he had found might be cocaine, he tasted it. He felt “an unusual feeling,” and tried to drive to the hospital. He was convicted of possession for sale of a controlled substance, namely PCP (Health & Saf. Code, § 11378).
 
 {People
 
 v.
 
 Guy, supra,
 
 107 Cal.App.3d at pp. 596-597.) Possession for sale of cocaine would have been punishable under a different code section (Health & Saf. Code, § 11351).
 
 {People
 
 v.
 
 Guy, supra,
 
 107 Cal.App.3d at p. 600, fn. 6.)
 

 Much as in
 
 Garringer,
 
 the jury was instructed: “ ‘Cocaine and phencyclidine are both controlled substances. It is no defense to the charge of possession of phencyclidine that the defendant believed he possessed cocaine. If the proof shows that the defendant knew that he possessed a controlled substance but believed it was cocaine, when the substance was actually phencyclidine, he is not relieved of criminal responsibility by reason of this mistake on his part in identifying the chemical nature of the controlled substance possessed by him.’ ”
 
 (People
 
 v.
 
 Guy, supra,
 
 107 Cal.App.3d at p. 600, fn. 5.)
 

 
 *155
 
 On appeal, the defendant challenged this instruction, and argued the jury should have been required to find that he knew the substance was PCP.
 
 (People
 
 v.
 
 Guy, supra,
 
 107 Cal.App.3d at p. 600 and fn. 5.) The court, relying on
 
 Garringer,
 
 disagreed: “In that case the court wisely determined that knowledge for the purpose of conviction ... is knowledge of the controlled nature of the substance and not its precise chemical composition.”
 
 (Id.,
 
 at p. 601.) In a footnote, the court recognized that in
 
 Garringer,
 
 both possession of the drug the defendant
 
 believed
 
 he had and possession of the drug he
 
 actually
 
 had were punishable under the same code section. It concluded, however, that this was not a meaningful distinction.
 
 (People
 
 v.
 
 Guy, supra,
 
 107 Cal.App.3d at pp. 600-601, fn. 7.)
 

 Defendant relies on a third case,
 
 People
 
 v.
 
 Innes
 
 (1971) 16 Cal.App.3d 175 [93 Cal.Rptr. 829]. There, the defendant sold what she called mescaline to an undercover officer; in fact, it was LSD.
 
 (Id.,
 
 at pp. 177-178.) She was convicted on one count of selling and offering to sell “a restricted dangerous drug, to-wit: LSD,” and a second count of selling and offering to sell “a restricted dangerous drug, to-wit: Mescaline”; both of these were violations of the same Health and Safety Code section (former Health & Saf. Code, § 11912; see now Health & Saf. Code, §§ 11352, 11379). (16 Cal.App.3d at p. 176.)
 

 The appellate court held: “[T]he evidence establishes the commission of only one offense of offering to sell or of offering to sell and selling a restricted dangerous drug.”
 
 (People
 
 v.
 
 Innes, supra,
 
 16 Cal.App.3d at p. 179.) “When defendant offered to sell [the undercover officer] the ‘thirteen caps’ she offered to sell him either ‘thirteen caps’ of Mescaline or ‘thirteen caps’ of whatever substance the capsules contained, which was proven to be LSD, but not both Mescaline and LSD. Contradicting inferences may not be drawn from the same evidence to support both a conviction of the offense of offering to sell Mescaline and the offense of offering to sell and selling LSD.”
 
 (Ibid.)
 

 The court then upheld the conviction for offering to sell mescaline, and reversed the conviction for selling or offering to sell LSD. It reasoned: “The elements of the offense of selling a restricted dangerous drug are the sale thereof with knowledge of the dangerous drug character of the substance sold. [Citations.] [H ... If the evidence had established [defendant] believed the ‘thirteen caps’ contained a substance the sale of which was not proscribed, the element of knowledge of the dangerous drug character of the substance sold would be lacking and she would not have committed the offense charged. By analogy, as the evidence establishes defendant believed the ‘thirteen caps’ contained Mescaline, and for this reason had no knowledge they contained LSD, she did not commit the offense of offering to sell and selling LSD.”
 
 (People
 
 v.
 
 Innes, supra,
 
 16 Cal.App.3d at pp. 178-179.)
 

 
 *156
 
 Innes's holding that a defendant cannot be convicted on two counts of selling a controlled substance based on a single sale of a single controlled substance is unobjectionable. We disagree, however, with its further statement that the defendant in that case was actually guilty of sale of mescaline, and not guilty of sale of LSD. In our view, she was guilty of a single offense, sale of a controlled substance. There may have been sound reasons, related to due process, for the information to allege which particular controlled substance she sold. (See
 
 Sallas
 
 v.
 
 Municipal Court
 
 (1978) 86 Cal.App.3d 737, 742-744 [150 Cal.Rptr. 543]; contra,
 
 Ross
 
 v.
 
 Municipal Court
 
 (1975) 49 Cal.App.3d 575, 579 [122 Cal.Rptr. 807].) Even if so, however, this pleading requirement does not transmute the offense of possession of a controlled substance into as many different offenses as there are controlled substances. We therefore do not believe the
 
 Innes
 
 court really had to decide whether the defendant there was guilty of selling mescaline, or guilty of selling LSD. To that extent, its opinion was dictum. In any event, we find
 
 Garringer
 
 and
 
 Guy,
 
 which squarely presented the same instructional issue we face here, more persuasive.
 
 [1]
 

 In his reply brief, defendant notes that he did in fact receive marijuana, as well as cocaine, and that he was therefore convicted of possession for sale of marijuana. As he also notes, drug possession, sale and transportation offenses require knowledge of the drug’s presence, in addition to knowledge of its character.
 
 (People
 
 v.
 
 Williams, supra,
 
 5 Cal.3d at p. 215;
 
 People
 
 v.
 
 Gory, supra,
 
 28 Cal.2d at p. 454.) He therefore argues that, although he was aware of the presence and the character of the marijuana, he was not aware of the
 
 presence
 
 of the cocaine. This shift of emphasis, however, is unavailing. Defendant obviously knew of the presence of the cocaine; he admitted seeing the bags of cocaine, even though he claimed he thought they contained marijuana.
 

 To bolster this argument, defendant poses the following hypothetical: What if a drug user buys a container of what he or she reasonably believes is heroin, but which actually contains heroin, cocaine, and marijuana? Would the buyer be guilty of possession of all three drugs? We note, parenthetically, that this is not quite the situation we have here; here, the cocaine was packaged differently and separately from the marijuana, so that defendant necessarily had a distinctive awareness of the presence of the cocaine.
 
 *157
 
 Nevertheless, even assuming this would be the result of our reasoning in an appropriate case, we find nothing untoward about it. There is a long line of cases holding that a defendant may be subject to multiple convictions for the simultaneous possession of multiple drugs.
 
 (In re Adams
 
 (1975) 14 Cal.3d 629, 635 [122 Cal.Rptr. 73, 536 P.2d 473], and cases cited;
 
 In re Hayes
 
 (1969) 70 Cal.2d 604, 606-607 [75 Cal.Rptr. 790, 451 P.2d 430], and cases cited.) Any seeming harshness of this result is mitigated by the fact that the buyer in defendant’s hypothetical would most likely be sentenced, as defendant was, concurrently rather than consecutively. (Cal. Rules of Court, rule 425.) The buyer arguably might even be entitled to have sentence on all but one of the convictions stayed under Penal Code section
 
 [2]
 
 (See generally,
 
 In re
 
 Adams, supra, 14 Cal.3d at p. 635.)
 

 Cocaine and marijuana are both controlled substances. (Health & Saf. Code, §§ 11054, subd. (d)(13) [marijuana], 11055, subd. (b)(6) [cocaine].) Admittedly, different code sections prohibit the possession, sale and transportation of cocaine (Health & Saf. Code, §§ 11350, 11351, 11352) than prohibit the possession, sale and transportation of marijuana. (Health & Saf. Code, §§ 11357, 11359, 11360.)
 
 [3]
 
 Nevertheless, we conclude that even if defendant thought he was trafficking exclusively in marijuana, he had the requisite knowledge of both the presence and the controlled substance character of the cocaine to be convicted under the code sections applicable to cocaine.
 
 [4]
 

 IV
 

 Failure to Instruct on Duress or Necessity
 
 *
 

 
 *158
 
 V
 

 Disposition
 

 The judgment is affirmed.
 

 Ramirez, P. J., and Ward, J., concurred.
 

 A petition for a rehearing was denied June 12, 1997, and appellant’s petition for review by the Supreme Court was denied September 3, 1997. Kennard, J., and Chin, J., were of the opinion that the petition should be granted.
 

 [1]
 

 We would be reluctant to fault the trial court for giving an instruction that had been specifically approved by the Court
 
 of
 
 Appeal in
 
 Garringer
 
 and Guy—all the more so as defendant, in objecting to the instruction at trial, failed to mention
 
 Innes
 
 or any of the other authorities on which he now relies.
 

 [2]
 

 Defendant does not claim the trial court here violated Penal Code section 654. Presumably he could not, because he ultimately admitted to the probation officer that he did agree to store cocaine.
 

 [3]
 

 If defendant were correct, one would expect cases arising under the statutes which specifically prohibit the possession or sale of marijuana to require knowledge of its “marijuana character.” All that is required, however, is knowledge of its “narcotic character.” (E.g.,
 
 People
 
 v.
 
 Rogers
 
 (1971) 5 Cal.3d 129, 133 [95 Cal.Rptr. 601, 486 P.2d 129];
 
 People
 
 v.
 
 Eckstrom
 
 (1986) 187 Cal.App.3d 323, 331 [231 Cal.Rptr. 664].)
 

 [4]
 

 Defendant raises his present contentions exclusively with respect to his convictions on counts 1, 2 and 3. He does not claim he had to know he had cocaine in order to be subject to the cocaine weight enhancements (Health & Saf. Code, § 11370.4, subd. (a)); moreover, the challenged instruction was limited to the substantive offenses, and did not purport to apply to the weight enhancements. We therefore express no opinion on any such claim.
 

 *
 

 See footnote,
 
 ante,
 
 page 147.