UNITED STATES of America, Plaintiff,

v.

Martin VEGA–ORTIZ, Defendant.

Case No. 13–cr–1636–BTM.

United States District Court, S.D. California.

Signed Oct. 28, 2013.

Anne K. Perry and Mark R. Rehe, Assistant United States Attorneys, Office of the United States Attorney, San Diego, CA, for Plaintiff.

Sara D. Brin, Assistant Federal Public Defender, Federal Defenders of San Diego, Inc., for Defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INFORMATION

BARRY TED MOSKOWITZ, Chief Judge.

Defendant Martin Vega–Ortiz ("Mr. Vega" or "the defendant") is charged with a single count of being a removed alien unlawfully present in the United States in violation of 8 U.S.C. § 1326. He entered a not guilty plea on May 28, 2013. The defendant has moved to dismiss the information. The Court denies the motion for the reasons set forth herein.

## I. BACKGROUND [1]

Mr. Vega emigrated to the United States without a visa in 1983 and joined his lawfully present family in California. (Decl. ¶¶ 2–4.) He remained in California for some 28 years, working primarily as a forklift driver. (Decl. ¶¶ 6, 8.) He has three children, each a U.S. citizen. (Decl. ¶ 7.) In December 2010, he was convicted of possessing a controlled substance (methamphetamine) for sale in violation of

Cal. Health & Safety Code § 11378 and § 11379(a).[2] On June 29, 2011, a Notice to Appear was issued alleging his unlawful presence and directing him to appear before an immigration judge ("IJ"). A deportation hearing was held on August 15, 2011. (Opp'n, Ex. 3.) At that hearing, the government added charges of deportability, alleging the December 7, 2010 conviction to be an aggravated felony under § 101(a)(43)(B) of the INA. The IJ entered an order of removal to Mexico following the hearing. (Opp'n, Exs. 5 & 6.) On August 16, 2011, the defendant was removed to Mexico. (Opp'n Ex. 7.)

During the hearing, Mr. Vega admitted, *inter alia*, to two convictions for violations of the California Health & Safety Code. The IJ also examined the charging documents concerning those convictions and found that Mr. Vega had been convicted of an aggravated felony. Mr. Vega was accordingly found subject to removal pursuant to (1) Immigration & Nationality Act ("INA") § 237(a)(2)(B)(i) (8 U.S.C. § 1227(a)(2)(B)(i)) for his conviction of a controlled substance offense, and (2) INA § 237(a)(2)(B)(iii); 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony. (Opp'n 3, Ex. 4.) The IJ informed Mr. Vega that he would not be permitted to return to the United States. A related consequence was that Mr. Vega was ineligible for "pre-conclusion voluntary departure" under INA § 240B(a). *See* 8 U.S.C. § 1229c; 8 C.F.R. § 1240.26.

Some four months after his deportation, Mr. Vega re-entered the United States, and the removal order was reinstated. (Opp'n, Ex. 7.) In April 2013, he was arrested a few miles north of the Mexican

---

**1.** This description is based on the parties' memoranda (Doc. Nos. 22, 25, & 26) and Mr. Vega's supporting declaration ("Decl.") (Doc. No. 24).

**2.** The government's argument is limited to the § 11378 conviction. The Court therefore focuses on § 11378, though § 11379(a) is similarly framed.

border, and he admitted to being a Mexican citizen lacking permission to enter the U.S. He has been charged by information with violating 8 U.S.C. § 1326. He now collaterally attacks his removal orders and seeks dismissal, arguing that (1) his convictions do not constitute aggravated felonies, (2) he was therefore eligible for voluntary departure, and (3) his hearing was constitutionally deficient because he was not so informed. (Mot. to Dismiss 5–6.)

## II. LEGAL FRAMEWORK

■ To sustain a collateral attack under § 1326(d), a defendant must demonstrate that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1048 (9th Cir.2004). An underlying deportation order is "fundamentally unfair" if (1) the defendant's due process rights were violated by defects in his deportation proceeding, and (2) he suffered prejudice as a result. *Id.*

■ An alien cannot collaterally attack an underlying removal order if he validly waived the right to appeal that order. *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000). However, the exhaustion requirement of 8 U.S.C. § 1326(d) "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process." *United States v. Muro–Inclan*, 249 F.3d 1180, 1183 (9th Cir.2001).[3] If Mr. Vega was eligible for voluntary departure, the exhaustion requirement is excused here because the IJ did not mention voluntary departure at the

hearing, as would be required by 8 C.F.R. § 1240.11(a)(2).

## III. DISCUSSION

### A. *§ 11378 Is Not Categorically An Aggravated Felony*

The government contends that Mr. Vega was properly deported because an alien "convicted of an aggravated felony at any time after admission is deportable," 8 U.S.C. § 1227(a)(2)(A)(iii), and is ineligible for voluntary departure. *U.S. v. Valdavinos–Torres*, 704 F.3d 679 (9th Cir.2012). Mr. Vega does not dispute that a felony methamphetamine trafficking violation qualifies as an aggravated felony. Rather, the parties argue vigorously over whether the Court may look to Mr. Vega's underlying conviction to determine whether it constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(B), which includes drug trafficking crimes. *See generally Rendon v. Mukasey*, 520 F.3d 967, 976 (9th Cir.2008). According to Mr. Vega, neither the IJ nor this Court may "look behind the curtain" of the conviction to determine whether the substance was one prohibited under the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 802. This argument is based on the fact that § 11378 does not name methamphetamine or any other substance. Instead, like the CSA, it references five lists or "Schedules" of substances in other Code sections. For clarity, California Health & Safety Code § 11378 is reproduced here *in extenso*:

> Except as otherwise provided in Article 7 (commencing with Section 4211) of Chapter 9 of Division 2 of the Business and Professions Code, every person who possesses for sale any controlled substance which is (1) classified in Schedule

---

**3.** There was a "general advisal on voluntary departure" at the initial appearance on August 3, 2011. (Mot. 3.) However, the government does not claim that was sufficient notice.

III, IV, or V and which is not a narcotic drug, except subdivision (g) of Section 11056, (2) specified in subdivision of Section 11054, (4) (20) except paragraphs (13), (14), (15), (20), (21), (22), of subdivision (d), (3) specified in paragraph (11) of subdivision (c) of Section 11056, 4 specified in paragraph (2) or (3) of subdivision (f) of Section 11054, or specified in subdivision (d), (e), or (f), except paragraph (3) of subdivision (e) and subparagraphs (A) an (B) of paragraph (2) of subdivision (f), of Section 11055, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code.

■■■ To determine whether Mr. Vega's conviction under that statute constitutes an aggravated felony, the Court uses the "categorical approach" set forth in *Taylor v. United States*, 495 U.S. 575, 598, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Under that approach, the Court looks only to the fact of conviction and the elements of the alleged predicate offense to determine whether it satisfies the definition of the qualifying federal offense (i.e., whether it is an aggravated felony). *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143; *Moncrieffe v. Holder*, —— U.S. ——, 133 S.Ct. 1678, 1685, 185 L.Ed.2d 727 (2013) ("to satisfy the categorical approach, a state drug offense must meet two conditions: It must 'necessarily' proscribe conduct that is an offense under the [CSA], and the [CSA] must 'necessarily' prescribe felony punishment for that conduct."). Here, it is undisputed that not all convictions under

§ 11378 qualify as drug trafficking offenses because it criminalizes a "broader swath" of drugs than those proscribed by the CSA. *Cabantac v. Holder*, 693 F.3d 825, 825–26 (9th Cir.2012) *amended on denial of reh'g by* 736 F.3d 787, 793–94 (9th Cir.2013); *Mielewczyk v. Holder*, 575 F.3d 992, 995 (9th Cir.2009). Since it is possible to violate § 11378 without violating the CSA, Mr. Vega's conviction is not categorically an aggravated felony. *Valdavinos–Torres*, 704 F.3d at 686–87. Typically, the Court would therefore turn to the "modified categorical approach," examining certain "approved documents" in the record to identify the substance underlying the conviction and determining whether it was one proscribed by the CSA.[4] But Mr. Vega argues that approach is impermissible here under the Supreme Court's recent decision in *Descamps v. United States*, 570 U.S. ——, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). If he's right, the categorical analysis ends here, short of the proof necessary to establish an aggravated felony conviction. The Court therefore turns to *Descamps* to determine whether the modified categorical approach is applicable. *Cf. She v. Holder*, 629 F.3d 958, 963–4 (9th Cir. 2010).

## B. § 11378 *Is Subject to the Modified Categorical Approach*

In *Descamps*, the defendant pled guilty to burglary in violation of a statute that applies whenever someone enters a certain place intending to commit a crime therein. Some thirty years later, he was sentenced

---

4. "Approved documents" include the charging document, jury instructions, plea colloquy, plea agreement, and judgment. *Descamps*, 133 S.Ct. at 2285 n. 2; *Shepard v. United States*, 544 U.S. 13, 20–21, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). The record here contains the charging document (Opp'n Ex. 9), plea agreement (Opp'n Ex. 10), and minute order entering judgment (Opp'n Ex.

11) for the December 2010 drug offense. While these documents do not say which subsection methamphetamine falls under, it appears to be § 11378(5), as the drug is classified as a Schedule II stimulant in § 11055(d)(2). It is undisputed that methamphetamine is on CSA Schedule II. *See* 21 U.S.C. § 812; 21 C.F.R. § 1308.12(d)(2).

in federal court for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). In deciding whether a sentence enhancement applied, the court had to determine whether the burglary conviction constituted a "violent felony" under the federal Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The definition of violent felony includes burglary, but that crime is given a "generic" definition which requires not just entering, but also "breaking" (i.e., unlawful entry), and thus does not encompass, e.g., shoplifting. Using the modified categorical approach, the district judge read the plea colloquy, found that the defendant had admitted to breaking and entering a grocery store, and applied the ACCA sentence enhancement. The Ninth Circuit affirmed.

■■■■ The Supreme Court reversed, holding that the modified categorical approach may be used only when a "divisible" statute "listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." 133 S.Ct. at 2276. A statute is divisible if it sets forth "multiple, alternative versions of the crime," thereby "effectively creat[ing] "several different crimes." " *Id.* at 2284–85 (citation omitted). A statute is "indivisible" if it does not have alternate elements and criminalizes a "broader swath of conduct" than the relevant federal law does. *Id.* at 2282. The Court explained that "when a defendant pleads guilty, he waives his right to a jury determination only of that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." *Id.* at 2288. Because unlawful entry was a necessary component of the federal definition of burglary, but not the state statute, the Court held that use of the modified categorical approach was error.

■■■■ The government argues that § 11378 is "divisible" because, like the federal Controlled Substances Act ("CSA") it is written in the "disjunctive," using the word "or" to join subsections referencing other statutes listing different substances. *See generally People v. Patterson*, 49 Cal.3d 615, 620, 262 Cal.Rptr. 195, 778 P.2d 549 (1989) ("[t]o create statutes separately proscribing the importation, sale, furnishing, administration, etc., of each of these drugs, would require the enactment of hundreds of individual statutes."). Pointing to *People v. Gerber*, 196 Cal. App.4th 368, 126 Cal.Rptr.3d 688 (2011), the government contends that the specific substance is an element, such that § 11378 is divisible as to drugs. Gerber was convicted of violating Cal. Health & Saf.Code § 11353 (proscribing the furnishing of drugs to a minor), which, like § 11378, references five classes of substances. Methamphetamine was not in any group referenced by § 11353, though cocaine base was. The jury was nonetheless instructed that § 11353 could be violated "by providing either cocaine base and/or methamphetamine to a minor." 196 Cal. App.4th at 387, 126 Cal.Rptr.3d 688. The Court of Appeal reversed, finding "instructional error on the elements" because the jurors could incorrectly conclude that "the controlled substance element ... had been proven if defendant furnished either cocaine base or methamphetamine." *Id.* Accord *People v. Heglin*, No. A131766, 2013 WL 959319 (Cal.Ct.App. Mar. 13, 2013) (unpub.) (reversing § 11353 conviction for including unlisted substance as an element in jury instructions).

The government also emphasizes that "a prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives." *Descamps*, 133 S.Ct. at 2290 (citation omitted); Witkin & Epstein, CAL.CRIMINAL LAW

(4th ed.2012) (" "a specified controlled substance" is an element common to all state drug crimes requiring proof of possession."). California model jury instructions for drug offenses in general, and those for § 11378 in particular, reflect as much. *See* CALCRIM ·2302 and CALJIC 12.01 (providing a blank space where the controlled substance is to be identified, and directing that the jury "must" find that fact to convict). These instructions are accepted by California courts. *See, e.g., People v. Montero,* 155 Cal.App.4th 1170, 1175, 66 Cal.Rptr.3d 668 (2007).

The Court agrees that the plain language of the statute suggests a high degree of divisibility. Indeed, to find such a statute indivisible would be inconsistent with the analysis adopted in *Taylor* and reaffirmed by *Descamps.* Courts interpreting similar statutes have reached the same conclusion. *See, e.g., United States v. Flores–Soriano,* No. 13–cr–0698, 2013 WL 5217518, *3 (D.Ariz. Sept. 17, 2013) (unpub.) ("Certainly, if a 'ship,' or a 'vehicle' can be an alternate 'element' as understood by the majority in *Descamps,* then 'heroin' or 'cocaine' can also be elements of 2411351."); *Valdavinos–Torres,* 704 F.3d at 686–687 (treating § 11378 as divisible); *United States v. Leal–Vega,* 680 F.3d 1160 (9th Cir.2012) (applying modified categorical analysis to discern substance under Cal. H & S § 11352); *Ramirez–Macias,* No. 13–cr–0059, 2013 WL 4723453 (E.D.Wash. Sept. 3, 2013) (finding Cal. H & S § 11352 divisible); *U.S. v. Gonzalez–Tejeda,* 2013 WL 4401381 (S.D.Ca. Aug. 15, 2013) (rejecting argument that a Washington statute enumerating groups of controlled substances, RCW § 69.50.401A, is indivisible).

For his part, the defendant contends that the drugs listed by reference in § 11378 are not "elements" because "a jury need not find the specific type of drug involved in a case." (Mot. 7–8.) Under this view, "possession of a controlled substance" is an element and each schedule of drugs merely enumerates different *means* of satisfying that element. The defense reasons that, if a specific drug need not be named in a pleading, plea, or verdict, it is just a fact masquerading as an element, and disjunctive drug statutes like § 11378 are really indivisible. (Reply 4, 7.) The Court disagrees.

Several cases cited by the defense are inapposite, as they concerned sufficiency of the pleadings challenges, where the ruling may only be disturbed upon a finding of prejudice "of a substantial right of the defendant upon the merits." *See* Cal.Penal Code § 960; *People v. Gelardi,* 77 Cal.App.2d 467, 472, 175 P.2d 855 (1946) (holding that "in the absence of a special demurrer," an information need not do more than "follow[ ] the language of the statute"); *People v. Orozco,* No. H024112, 2003 WL 23100024, *4 (Cal.Ct.App. Dec. 31, 2003) (unpub.) (the issue was "a variance between pleading and proof"). In *People v. Martin,* 169 Cal.App.4th 822, 825, 86 Cal.Rptr.3d 858 (2008) and *People v. Howington,* 233 Cal.App.3d 1052, 1056, 284 Cal.Rptr. 883 (1991), the Court of Appeal found no error in the inconsistent use of the terms "cocaine" and "rock cocaine" (*Howington* ) or "cocaine base" (*Martin* ) because (1) the defense did not object to the specificity of the pleadings, and (2) there was no prejudice to the defendant (e.g., in the form of extra jail time). *See, e.g., Martin,* at 827, 86 Cal.Rptr.3d 858 ("Assuming ... the issue is not waived, we further find that the conflicting references to cocaine and cocaine base caused no prejudice ... as the penalty in [§ ]11350(a) is the same, whether the controlled substance is cocaine or cocaine base."). *People v. Bryant* similarly rests on an interpretation of the scope of the term "cocaine." No. B194468, 2007 WL

2356072 (Cal.Ct.App. Aug. 20, 2007) (unpub.) (finding no error in reliance on proof of cocaine base to satisfy cocaine possession charge under statute subjecting possession of either to the same penalty). Finally, *People v. Romero,* 55 Cal.App.4th 147, 156, 64 Cal.Rptr.2d 16 (1997) concerns the *mens rea* for possession, not whether the specific drug is an element.

The defense also relies on cases holding that defendants may plead guilty to certain controlled substance offenses without admitting to the specific type of drug involved. *United States v. Thomas,* 355 F.3d 1191 (9th Cir.2004); *United States v. Hunt,* 656 F.3d 906, 916 (9th Cir.2011) ("Even though due process requires that drug type be charged in the indictment and proved beyond a reasonable doubt, a defendant can plead guilty to a possession with intent to distribute offense without admitting the type of drug."); *Ross v. Municipal Court of Los Angeles,* 49 Cal. App.3d 575, 578–79, 122 Cal.Rptr. 807 (1975) (surmising that practice of charging drug crimes without identifying the substance was due to the absence of "a reasonably certain way of knowing [e.g., at the time of arraignment] what that substance was" but noting that the government must promptly respond to a request for discovery as to the underlying substance). The defendant's reliance on this line of authorities is misplaced. They present a situation quite distinct from the one in *Descamps.* In *Descamps,* it did not matter how the defendant got into the grocery store—it was a crime regardless. In a § 841(a)(1) prosecution (e.g., *Thomas,* Hunt) it matters very much what the defendant possessed—there was no violation if it wasn't an enumerated substance. So too here. Thus, even assuming drug type need not be specifically charged in a § 11378 prosecution, it is consequential if it must be proven beyond a reasonable doubt. Therefore, though it references

Schedules that are broader than their federal counterparts, the Court finds that § 11378 is "divisible" and subject to the modified categorical approach.

### C. *Acceptable Evidence Established a Methamphetamine Conviction*

■ Since the modified categorical approach may be used, it was appropriate for the IJ to examine the record to determine the precise offense of conviction. *See Descamps,* 133 S.Ct. at 2287 (the modified analysis is a tool for implementing the categorical approach by identifying the crime of conviction so the court can compare it with the federal statute). The Court considers only "approved documents," and notes that Mr. Vega has not challenged the sufficiency of the evidence. *See Id.* at 2285 n. 2. The Court accordingly finds that the criminal complaint, plea agreement, and minute order entering the change of plea are sufficient proof that Mr. Vega pled guilty to felony possession, "for purpose of sale a controlled substance, METHAMPHETAMINE." (*See* Opp'n Exs. 9 & 10.)

### D. *Mr. Vega Was Ineligible for Voluntary Departure*

■ Possession of methamphetamine for sale in violation of § 11378 is a drug trafficking crime and an aggravated felony for purposes of the INA. *Valdavinos–Torres,* 704 F.3d at 686. Hence, Mr. Vega was ineligible for voluntary departure at the time of his removal proceedings. 8 U.S.C. §§ 1229c, 1254(e); 8 C.F.R. § 1240.26. Naturally, the IJ was not required to mention relief that Mr. Vega had no right to seek. Thus, the Court finds no error and no prejudice.

### IV. CONCLUSION

For the reasons stated, the Court finds that Mr. Vega's 2010 conviction under Cal-

ifornia Health and Safety Code § 11378 for the unlawful possession of methamphetamine for sale is an aggravated felony. Mr. Vega was therefore ineligible for voluntary departure at the time of his removal proceedings. Because he has demonstrated no due process violation (and no prejudice) with respect to his removal, Mr. Vega's collateral attack fails. Accordingly, the Defendant's Motion to Dismiss the Information is **DENIED.**

**SO ORDERED.**